Paul E. Rice/Bar No. 062509
**RICE & BRONITSKY**
350 Cambridge Avenue, Suite 225
Palo Alto, CA 94306
Telephone: 650/289-9088
Facsimile: 650/289-9093
price@civlit.com

Attorneys for Plaintiff
B&O Manufacturing, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO/OAKLAND DIVISION

B&O MANUFACTURING, INC.,

    Plaintiff,

v.

THE HOME DEPOT, INC.,

    Defendant.

Case No. C07 02864

**COMPLAINT FOR BREACH OF CONTRACT, RESCISSION, AND RESTITUTION**

**DEMAND FOR TRIAL BY JURY**

**COMES NOW** Plaintiff, and demanding trial by jury, alleges as follows:

### GENERAL ALLEGATIONS

1. Plaintiff, B&O Manufacturing, Inc. ("B&O"), is a California corporation, whose principal place of business is South San Francisco, California.

2. Defendant, The Home Depot, Inc. ("THD"), is a Delaware corporation, whose principal place of business is Atlanta, Georgia.

### JURISDICTION

3. The Court has jurisdiction of this Complaint, pursuant to 28 USC 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.

4. Further, pursuant to a contract entered into by B&O and THD on or about April 5, 2005, the parties agreed that any litigation arising out of said contract, which this lawsuit does, shall be brought only in the United Stated District Court for the Northern District of California. A true and correct copy of said contract, sans attachments, is attached hereto as Exhibit 1. Plaintiff has not attached said

1

COMPLAINT

1  attachments as, inter alia, they contain pricing information that B&O believes THD may consider to
2  be confidential.

## VENUE

4  5. Venue is proper in the Northern District of California under 28 USC 1391(a), in that a
5  substantial part of the events or omissions giving rise to the claim occurred in said District.

## FIRST CLAIM FOR RELIEF (BREACH OF CONTRACT)

7  6. Pursuant to Exhibit 1, Section 1.a., THD agreed to purchase from B&O, not later than May
8  15, 2005, 72,000 split curtain safety netting systems.

9  7. THD has breached said contract by purchasing substantially less than 72,000 split curtain
10 safety netting systems by May 15, 2005, all to Plaintiff's damage, according to proof.

11 8. Pursuant to Exhibit 1, Section 1.e., THD agreed to purchase all orange netting then owned by
12 B&O at specified prices.

13 9. THD has further breached said contract by failing to purchase all orange netting then owned
14 by B&O at specified prices, all to Plaintiff's damage, according to proof.

15 10. Pursuant to Exhibit 1, Section 1.c., THD was obligated to advise B&O of the identity of
16 suppliers of safety netting products similar to Plaintiff's safety netting products, located in the State
17 of California, and of the location of the stores in which said similar products were located.

18 11. THD has further breached said contract by failing to so advise B&O, all to Plaintiff's
19 damage, according to proof.

20 12. Plaintiff has at all times been in compliance with its obligations under said contract.

21 **WHEREFORE,** Plaintiff prays judgment as follows:

## SECOND CLAIM FOR RELIEF (BREACH OF CONTRACT)

23 13. Plaintiff incorporates by reference, as though set forth in full, paragraphs 6 through 12 above.

24 14. For approximately the past thirteen years, Defendant has been, cumulatively, by far,
25 Plaintiff's biggest customer.

26 15. On or about January 31, 2006, while B&O's president was at THD's facilities, THD required
27 B&O, without allowing B&O the opportunity to consult with legal counsel, to immediately prepare
28 and sign, on Plaintiff's letterhead, a letter agreement regarding a commitment to pay to THD sums not

RICE & BRONITSKY
350 Cambridge Avenue, Suite 225
Palo Alto, CA 94306
650/289-9088

COMPLAINT

1  actually owing to it, a true and correct copy of which is attached hereto as Exhibit 2, and which letter
2  agreement served to modify Exhibit 1.

3  16. THD promised that if B&O executed said document, B&O would continue to receive
4  purchase orders for substantial quantities of product from Defendant, and that if it did not, B&O
5  would no longer receive purchase orders for substantial quantities of product.

6  17. Exhibit 2, by virtue of a margin notation, indicates that Exhibit 2 was approved by THD's
7  legal department.

8  18. On information and belief, THD's legal department participated in the process of coercing
9  Plaintiff into executing said Exhibit 2, based upon the threat that if Plaintiff did not execute said
10 document, Defendant would abruptly cease all future business dealing with Plaintiff.

11 19. Although B&O had no direct discussions with THD's legal department, on information and
12 belief, the persons acting on behalf of THD concerning the execution of Exhibit 2 acted as agents of
13 THD's legal department in communicating with B&O. THD and its legal department were well
14 aware that B&O was represented by counsel with respect to the negotiation and execution of Exhibit
15 1 and all payments related thereto based, inter alia, on the participation by Plaintiff's counsel in
16 drafting Exhibit 1, and further, by the fact that Plaintiff's counsel traveled to Defendant's
17 headquarters in Atlanta, Georgia, for a meeting that ultimately resulted in the execution of Exhibit 1.

18 20. This indirect contact with B&O by THD's legal department under the facts and
19 circumstances surrounding the execution of Exhibit 2 was a violation of well established rules of
20 professional conduct prohibiting direct or indirect communication with a party known to be
21 represented by another lawyer, absent the consent of the other lawyer. Such conduct is prohibited, for
22 example, by California Rules of Professional Conduct, Rule 2-100; State Bar of Georgia Rules of
23 Professional Conduct, Rule 4-2; and the American Bar Association Model Rules of Professional
24 Conduct, Rule 4.2.

25 21. Despite its representation to Plaintiff that if it were to execute Exhibit 2, Defendant would
26 continue to order substantial quantities of product from Plaintiff, which B&O justifiably relied upon,
27 Defendant has failed to provide substantial purchase orders to Plaintiff, all to Plaintiff's damage, in an
28 amount to be determined according to proof.

RICE & BRONITSKY
350 Cambridge Avenue, Suite 225
Palo Alto, CA 94306
650/289-9088

1 | **WHEREFORE,** Plaintiff prays judgment as follows:

### THIRD CLAIM FOR RELIEF (RESCISSION AND RESTITUTION)

22. Plaintiff incorporates by reference, as though set forth in full, paragraphs 6 through 12 and 14 through 21, above.

23. By virtue of the duress, and/or fraud, and/or undue influence and/or the violation of rules of professional conduct referenced above, Plaintiff is entitled to a rescission of any contractual obligations that might otherwise exist pursuant to Exhibit 2, and to restitution of all amounts paid by it to THD thereunder.

**WHEREFORE,** Plaintiff prays judgment as follows:

1. For damages according to proof;
2. For interest;
3. For Rescission of Exhibit 2, and Restitution by Defendant to Plaintiff of all sums paid thereunder;
4. For attorneys' fees;
5. For costs of suit; and
6. For such other and further relief as the Court may deem proper.

**Demand for Jury Trial**

Dated: June: \_\_\_, 2007

RICE & BRONITSKY

By: _____
Paul E. Rice
Attorneys for Plaintiff
B&O Manufacturing, Inc.

RICE & BRONITSKY
350 Cambridge Avenue, Suite 225
Palo Alto, CA 94306
650/289-9088



# ORIGINAL

## MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding is intended to clarify the mutual understanding between **Home Depot U.S.A., Inc.** ("Home Depot") and **B&O Manufacturing, Inc.** ("B&O") with regards to their continuing business relationship.

Both parties agree that:

1. <u>Home Depot Commitments</u>

    a. Home Depot agrees to issue purchase orders for 72,000 units of the split curtain safety netting systems described in Exhibit A, at the prices referenced in said Exhibit A, plus sales tax and freight charges ("Products") by no later than May 15, 2005, provided B&O confirms that it is able to deliver such products in substantial compliance with the Schedule set forth in Exhibit A. Prior to delivery of the first 12,000 units, Home Depot shall make prepayment in full for said units. Payment for all other units shall be made pursuant to the terms of the then applicable Expense Buying Agreement, but not to exceed thirty days from each shipment by B &O.

    b. During calendar year 2005 and through March 31, 2006, Home Depot agrees that B&O will receive orders representing no less than fifty percent (50%) of Home Depot's requirements for safety netting systems, in new and remodeled stores, at the prices referenced in said Exhibit A, plus sales tax and freight charges. Payment shall be made pursuant to the terms of the then applicable Expense Buying Agreement, but not to exceed thirty days from each shipment by B &O.

    c. Home Depot will promptly identify in writing to B&O those suppliers from which it purchases safety netting products similar to the Products for use in its stores, when it first becomes aware of the identity of any such supplier. Additionally, whenever Home Depot becomes aware of the installation of safety netting products similar to the Products in any Home Depot store located in the State of California, Home Depot shall use commercially reasonable efforts notify B&O in writing of the location of each such store. Notwithstanding the previous sentence, B&O acknowledges that third parties install safety netting on behalf of Home Depot, and Home Depot may not be aware of the locations where third party safety netting may be installed.

    d. Home Depot agrees and acknowledges that it has no intellectual property ownership or rights in the Products referenced in Exhibit A, or in any patents on said Products, and shall, upon the request of B&O promptly execute such documents as are reasonably request by B&O to confirm such, and further to quitclaim, assign and transfer any rights it might have therein, if any, to B&O, and or Michael J. Calleja, as directed by B&O.

    e. Home Depot shall purchase all orange netting currently owned by B&O at the price referenced in Exhibit A. Home Depot may direct B&O to utilize said netting in the manufacture of the safety netting systems referenced in 1.a. and 1.b. above.

2. <u>B&O Commitments</u>

    a. B&O shall supply Home Depot the Products on a non-exclusive basis.

    b. The Products will meet or exceed industry standards for quality and will be shipped on time in compliance with the mutually agreed upon shipping schedule indicated on each Home Depot purchase order.

    c. B&O will execute the Release attached to this memorandum as <u>Exhibit B</u> and the Expense Buying Agreement attached as <u>Exhibit C</u>.

3. <u>Controlling Documents</u>. In the event of a conflict between the terms of this Memorandum and the terms of the Expense Buying Agreement, the terms of this Memorandum will control in all respects. This Memorandum and the attached Exhibits constitute the entire agreement between the parties with respect to the subject matter herein, except that nothing contained in the Expense Buying Agreement or otherwise, shall either preclude B&O or Michael J. Calleja from bringing suit against any party other than the Home Depot for patent infringement or other violation of the intellectual property or other rights of B&O and/or Michael J. Calleja. No amendment shall be valid unless in writing and signed by a duly authorized representative of each party.

4. Venue and Controlling Law. In the event of any litigation between the parties arising out of this Memorandum, the Parties agree that any litigation shall be brought in the United States District Court for the Northern District of California, and nowhere else. The Parties further agree that this contract is entered into in the State of California, and that the laws of the State of California, except those laws governing conflicts of laws, shall govern.

If you are in agreement with the foregoing, please so indicate by executing a copy of this memorandum and returning one signed copy to the attention of Scott Long, Manager - Procurement. The terms of this memorandum shall become effective when fully executed by the parties.

Home Depot U.S.A., Inc.

Scott Long
COE Leader
Date: _____

B&O Manufacturing, Inc.

Name: _____
Title: _____
Date: _____



2



January 31, 2006

Mr. David Curley
Procurement Manager
The Home Depot
Atlanta, GA

Re:   Open Balance Refund Agreement

Dave:

This agreement confirms the arrangement between The Home Depot (THD) and B&O Manufacturing, Inc. (B&O) in regards to the refund of $1,780,638.76 as represented by the THD payment of $1,062,000 for THD purchase order # 9000522338 and the open balance of $727,638.76 from THD purchase order # 9001007483.

Payments to THD will be based on THD's fiscal year, made on a quarterly basis and mailed to THD within twenty (20) days from the quarter close. The schedule below lists the THD quarter end and expected payment date from B&O.

| | |
|---|---|
| April 30, 2006 | May 20, 2006 |
| July 31, 2006 | August 20, 2006 |
| October 31, 2006 | November 20, 2006 |
| January 31, 2007 | February 20, 2007 |

The payment amount will be based on fifty percent (50%) of the payments received by B&O from THD for the representative quarter. An accounting of these payments as well as a copy of the remittance advices from THD will be included with the payment on a quarterly basis. (This will also be emailed to you in Excel format for your records).

By executing below THD & B&O agree to the above agreement and the quarterly refund payment schedule as detailed above.

_____
B&O Manufacturing, Inc.
Michael J. Caneja
President

1/31/06
Date

_____
The Home Depot U.S.A., Inc.
David J. Curley   Thomas Single
VP - Procurement Manager

2-1-06
Date

APPROVED LEGAL

B&O Mfg. Inc., 245 East Harris Ave., So. San Francisco, CA 94080, Ph: 1-650-873-8795, Fax: 1-415-022-4524