| | |
|---|---|
| 1 | SEDGWICK, DETERT, MORAN & ARNOLD LLP |
| | STEVEN ROLAND (Bar No. 108097) |
| 2 | AMBER RYE BRUMFIEL (Bar No. 215181) |
| 3 | One Market Plaza |
| | Steuart Tower, 8th Floor |
| 4 | San Francisco, California 94105 |
| | Telephone: (415) 781-7900 |
| 5 | Facsimile: (415) 781-2635 |

BONDURANT, MIXSON & ELMORE, LLP
RONAN P. DOHERTY (*Pro Hac Vice*)
CHRISTOPHER T. GIOVINAZZO (*Pro Hac Vice*)
3900 One Atlantic Center
1201 West Peachtree Street NW, Suite 3900
Atlanta, Georgia 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

Attorneys for Defendant
HOME DEPOT U.S.A., INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| B&O MANUFACTURING, INC., | CASE NO. C07 02864 JSW |
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO (1) TRANSFER VENUE TO THE NORTHERN DISTRICT OF GEORGIA AND (2) DISMISS COUNTS TWO THROUGH FIVE OF PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEREOF** |
| v. | |
| HOME DEPOT U.S.A., INC., | |
| Defendant. | |

# TABLE OF CONTENTS

TABLE OF OF CONTENTS ................................................................................................................ i

TABLE OF OF AUTHORITIES ......................................................................................................... ii

SUMMARY OF ARGUMENT ........................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................... 2

I.   INTRODUCTION .................................................................................................................. 2

II.  THE CASE SHOULD BE TRANSFERRED TO THE NORTHERN
     DISTRICT OF GEORGIA ..................................................................................................... 3

III. COUNT TWO FAILS TO STATE A CLAIM FOR RESCISSION
     OR RESTITUTION AND B&O HAS WAIVED ANY RIGHT TO
     RESCISSION .......................................................................................................................... 6

     A.   Count Two Fails to Allege Facts Warranting Relief
          Under Any of the Legal Theories Identified in the Complaint ................................. 6

          1.   The Alleged Professional Misconduct by Home Depot's
               Lawyers Is Facially Implausible And Does Not Give Rise To
               A Legal Claim By B&O…........................................................................... 7

          2.   The Complaint Fails to Allege Duress or "Threats" Warranting
               Relief ............................................................................................................ 8

     B.   B&O Has Waived Any Right To Rescission ............................................................ 9

IV.  COUNT THREE SHOULD BE DISMISSED BECAUSE HOME DEPOT
     HAS FULFILLED THE ALLEGED PROMISE AND BECAUSE THE
     PROMISE IS UNENFORCEABLE ..................................................................................... 10

     A.   The Complaint Admits That Home Depot Awarded B&O "Substantial
          Business" ................................................................................................................. 11

     B.   The Alleged Oral Promise to Give B&O "Substantial Business"
          is Unenforceable Under the Statute Of Frauds ....................................................... 11

     C.   The Alleged Promise is Too Indefinite to Induce Reasonable
          Reliance ................................................................................................................... 12

V.   COUNT FOUR FAILS TO STATE A CLAIM FOR DECLARATORY
     RELIEF AND THE EBA ALLOWS HOME DEPOT TO TERMINATE
     WITHOUT CAUSE ............................................................................................................. 13

VI.  COUNTS FOUR AND FIVE SHOULD BE DISMISSED BECAUSE
     MEDIATION IS A CONDITION PRECEDENT TO FILING SUIT UNDER
     THE EBA ............................................................................................................................. 14

CONCLUSION ................................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Ackerman v. First Nat'l Bank*, 239 Ga. App. 304 (1999) ............................................................... 8

*American Viking Contractors, Inc. v. Scribner Equip. Co.*, 745 F.2d 1365 (11th Cir. 1984) ............................................................................................................................... 12

*Armstrong v. Rohm & Haas Co.*, 349 F. Supp. 2d 71 (D. Mass. 2004) ......................................... 12

*Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955 (2007) .............................................. 7

*Bethel Native Corp. v. Department of Interior*, 208 F.3d 1171 (9th Cir. 2000) ............................ 13

*Brown v. Petroleum Helicopters, Inc.*, 347 F. Supp. 2d 370 (S.D. Tex. 2004) ................................ 4

*Cooperative Res. Ctr., Inc. v. Southeast Rural Comty. Assistance Project, Inc.*, 256 Ga. App. 719 (2002) ...................................................................................................... 8

*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183 (S.D. Cal. 2007) ............................................................................................................... 5

*C.R. Fedrick, Inc. v. Borg-Warner Corp.*, 552 F.2d 852 (9th Cir. 1977) ....................................... 12

*CrossTalk Productions, Inc. v. Jacobson*, 65 Cal. App. 4th 631 (1998) .......................................... 9

*Davis v. Findley*, 262 Ga. 612 (1992) .............................................................................................. 8

*FMC Finance Corp. v. Reed*, 592 F.2d 238 (5th Cir. 1979) .......................................................... 12

*Gould v. Gould*, 240 Ga. App. 481 (1999) ............................................................................... 14, 15

*Greater L.A. Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103 (9th Cir. 1987) ......................... 13

*In re Marriage of Burkle*, 139 Cal. App. 4th 712 (2006) ................................................................. 9

*International Service Ins. Co. v. Gonzales*, 194 Cal. App. 3d 110 (1987) ...................................... 5

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) ....................................................... 4

*Mobley v. Coast House, Ltd.*, 182 Ga. App. 305 (1987) .................................................................. 9

*Sabella v. Litchfield*, 274 Cal. App. 2d 195 (1969) ......................................................................... 9

*Simler v. Conner,* 372 U.S. 221 (1963) .......................................................................................... 14

*Smith v. Gordon*, 266 Ga. App. 814 (2004) ..................................................................................... 8

*Stewart Org. v. Ricoh Corp.*, 487 U.S. 22 (1988) ............................................................................ 4

*Tidwell v. Critz*, 248 Ga. 201 (1981) ............................................................................................... 9

*Walker v. KFC Corp.*, 728 F.2d 1215 (9th Cir.1984) ........................................................................ 11

*Woods v. Wright*, 163 Ga. App. 124 (1982).................................................................................... 10

**Statutes**

Cal. Comm. Code § 2201(1)............................................................................................................ 12

Cal. Civ. Code § 1588 .........................................................................................................................9

Fed. R. Civ. P. 12(b)(3)........................................................................................................................1

Fed. R. Civ. P. 12(b)(6) ................................................................................................................... 1, 3

O.C.G.A. § 11-2-201(1)....................................................................................................................12

O.C.G.A. § 13-5-6…...........................................................................................................................8

28 U.S.C. § 1404(a) ……..................................................................................................................1, 4

28 U.S.C. § 1406……......................................................................................................................1, 4

**Other**

Am. Bar Ass'n Cent. for Prof. Resp., *Annot. Model Rules of Prof. Conduct*,
    Preamble, ¶ 20 at 4 (5th ed. 2003).........................................................................................8

Cal. R. of Prof. Conduct § 2-100 ........................................................................................................7

Georgia R. of Prof. Conduct 4.2(a).....................................................................................................7

U.C.C. § 2-201(1)............................................................................................................................12

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on September 21, 2007, at 9:00 a.m., in Courtroom 3 of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Home Depot U.S.A., Inc. ("Home Depot") will, and hereby does, move the Court (1) to transfer the case to the Northern District of Georgia pursuant to 28 U.S.C. §§ 1404(a) and 1406; and (2) to dismiss Counts Two through Five of the Second Amended Complaint ("Complaint") pursuant to Rule12(b)(6) of the Federal Rules of Civil Procedure.

## SUMMARY OF ARGUMENT

In its five-count Complaint, Plaintiff B&O Manufacturing, Inc. ("B&O"), a safety netting vendor, has sued Home Depot over three contracts between the parties: (1) an April 2005 "Memorandum of Understanding" ("MOU," attached to Complaint as Exh. 1); (2) a January 31, 2006 "Open Balance Refund Agreement" ("Refund Agreement," attached to Complaint as Exh. 2); and (3) a June 2006 "Expense Buying Agreement" ("EBA," attached to Complaint as Exh. 3).

Pursuant to 28 U.S.C §§ 1404(a) and 1406 and Fed. R. Civ. P. 12(b)(3), this case should be dismissed and transferred to the Northern District of Georgia. Two of the three contracts at issue are controlled by Georgia law, and the main contract governing the relationship between the parties contains an express forum selection clause designating the Northern District of Georgia as the place for all litigation. The Complaint also pleads non-contract claims arising out of a January 31, 2006 meeting that took place in Atlanta, Georgia. Further, the majority of witnesses and evidence – indeed, all of Home Depot's witnesses and evidence – are in Georgia.

If the Court elects not to transfer the case, the Court should proceed to dismiss Counts Two through Five for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). Count Two (seeking Rescission and Restitution of the Refund Agreement) fails as a matter of law because the Complaint itself does not plead facts that would give rise to a right to rescission or restitution under any legal theory. Count Three (alleging Promissory Estoppel) fails because the Complaint makes clear that Home Depot fulfilled the only promise alleged in Count Three, and because the

1 promise alleged is a vague, unenforceable, oral pledge to provide B&O with "substantial
2 business." Counts Four and Five should be dismissed because B&O has failed to satisfy the
3 EBA's mandatory mediation clause. Finally, Count Four's claim that Home Depot has no right
4 to terminate the EBA improperly seeks declaratory relief and is contradicted by the plain terms
5 of the EBA.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

8  This litigation concerns the business relationship between Plaintiff B&O, a safety netting
9 vendor, and Defendant Home Depot. B&O's Complaint alleges that Home Depot has breached
10 three contracts between the parties. In Count One, B&O alleges that Home Depot failed to
11 purchase B&O's products as promised in an April 2005 "Memorandum of Understanding"
12 ("MOU," attached to Complaint as Exh. 1). *See* Compl. ¶¶ 7, 9. In Counts Two and Three,
13 B&O alleges that Home Depot wrongfully induced B&O to draft and then enter the January 31,
14 2006 Refund Agreement (attached to Complaint as Exh. 2), and that Home Depot broke an oral
15 promise to give B&O "substantial business" if it signed the Refund Agreement. *See* Compl.
16 ¶¶ 17, 21, 22. In Counts Four and Five, B&O alleges that Home Depot breached the June 2006
17 "Expense Buying Agreement" ("EBA," attached to Complaint as Exh. 3), and that Home Depot
18 wrongfully terminated the EBA.

19  B&O's decision to sue Home Depot over these three contracts demonstrates considerable
20 bravado. The truth is that Home Depot issued all the purchase orders promised in the 2005
21 MOU and ***pre-paid B&O the entire amount owed*** – a total of over $5 million. Despite having
22 received full payment from Home Depot in advance, B&O failed to deliver nearly $1.8 million
23 worth of product for which Home Depot had pre-paid. Because B&O could neither deliver the
24 product nor return Home Depot's money, the parties negotiated the January 31, 2006 Refund
25 Agreement, which allowed B&O to repay Home Depot the $1.8 million over time. Although
26 B&O alleges that Home Depot coerced B&O into signing the Refund Agreement, *see* Compl. ¶¶

27
28

1  21-22, the Complaint also concedes that B&O drafted the Refund Agreement on its own
2  letterhead, signed the Refund Agreement and then presented it to Home Depot.  *See* Compl. ¶ 15.
3  Regardless, B&O made only two of the payments required by the Refund Agreement, and B&O
4  continues to owe Home Depot over $1 million.

5  In June 2006, the parties entered the EBA, which sets forth the terms and conditions for
6  Home Depot's purchases from B&O from April 1, 2006 to the present, requires Home Depot to
7  purchase 75% of its new store safety netting from B&O starting from April 2006.  *See* Exh. A-1
8  to EBA, ¶ III.  Home Depot has satisfied this requirement.  In sum, Home Depot has performed
9  under each of the three contracts at issue.  And while B&O claims that Home Depot has been its
10 largest customer "by far" during the entire relevant period (*see* Compl. ¶ 14), B&O still owes
11 Home Depot over $1 million for the prepaid inventory and has refused either to refund Home
12 Depot this amount or to provide products worth this amount.

13 Despite that fact, B&O nonetheless filed this lawsuit against Home Depot on June 1,
14 2007.  When Home Depot moved to dismiss, B&O filed the Second Amended Complaint rather
15 than answer the motion.  By that time, Home Depot had notified B&O that it was terminating the
16 EBA effective September 23, 2007.  *See* July 26, 2007 Termination Letter, attached as Exh. A.
17 B&O's Second Amended Complaint thus includes new allegations that Home Depot has
18 breached the EBA.  *See* Compl. Counts Four and Five.

19 Setting aside the merits of B&O's claims, the Court should transfer this case to the
20 Northern District of Georgia because the Complaint now focuses primarily on a meeting that
21 took place in Georgia and two contracts controlled by Georgia law, one of which expressly
22 designates Georgia as the agreed forum for any litigation between the parties.  In addition, and
23 even accepting B&O's allegations as true for purposes of this motion, Counts Two through Five
24 should be dismissed as a matter of law for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).

25 **II.    THE CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF**
26 **        GEORGIA**

27 B&O's original and First Amended Complaints focused on the MOU and Refund
28

1 Agreement and did not include allegations concerning the EBA. *See* Docket Nos. 1 and 11. As
2 each of the Complaints notes, the MOU states that litigation "arising out of this Memorandum"
3 shall be brought in the Northern District of California. *See* MOU ¶ 4. The Second Amended
4 Complaint, however, adds two claims for relief under the June, 2006 EBA. *See* Compl., Counts
5 Four and Five. The EBA is controlled by Georgia law and requires that if mediation is
6 unsuccessful, all "disputes arising under *or in connection*" with the EBA must be brought in the
7 Northern District of Georgia. EBA ¶¶ 16-17 (emphasis added).

8   To honor the forum selection clauses in both the MOU and EBA, the Court would have
9 to sever Counts Two through Five and transfer them to the Northern District of Georgia.
10 However, 28 U.S.C. § 1404(a) allows the Court to conduct an "individualized, case-by-case-
11 consideration of convenience and fairness" when evaluating a motion to transfer. *Stewart Org.*
12 *v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Despite the competing forum selection clauses in the
13 MOU and EBA, the Court should defer to the EBA's forum selection clause because it is the
14 most recent negotiated agreement between the parties and because the clause broadly applies to
15 all disputes arising "in connection" with the parties' purchase agreements. EBA ¶ 17.
16 Moreover, B&O acknowledges that all of the claims in the Complaint are connected and that
17 judicial economy militates for adjudicating them together. Compl. ¶ 4. Home Depot agrees, but
18 the most appropriate forum for that dispute is in the Northern District of Georgia. Accordingly,
19 the Court should transfer the entire case to Georgia under 28 U.S.C. §§ 1404(a) and 1406. *See*
20 *Brown v. Petroleum Helicopters, Inc*., 347 F. Supp. 2d 370, 374 (S.D. Tex. 2004) (declining to
21 enforce dueling forum selection clauses that would require parties to litigate related contract
22 claims in two different courts).

23   Multiple factors beyond the EBA's forum selection clause favor transfer of the case,
24 including the location where the relevant agreements were negotiated and executed; the state that
25 is most familiar with the governing law; the parties' contacts in the forum; and the ease of access
26 to witnesses and other evidence. *See Jones v. GNC Franchising, Inc*., 211 F.3d 495, 498-99 (9th
27 Cir. 2000). First, Georgia law controls the majority of the claims at issue, which concern events
28

1  that the Complaint concedes took place in Georgia.  Counts Four and Five of the Complaint are
2  directly subject to the EBA's Georgia choice-of-law and forum selection clauses.  *See* EBA ¶ 17.
3  Counts Two and Three focus on the Refund Agreement and the January 31, 2006 meeting
4  between the parties that took place in Atlanta, Georgia.  According to the Complaint, B&O's
5  president, Michael Calleja, voluntarily traveled to Georgia for that meeting, where he prepared
6  and then signed the Refund Agreement before presenting it to Home Depot – all in Atlanta,
7  Georgia.  *See* Compl. ¶ 15.  The Refund Agreement is a Georgia contract because it was signed
8  in Atlanta and does not specify a place of performance.  *See* Compl. ¶ 15; *International Service*
9  *Ins. Co. v. Gonzales*, 194 Cal. App. 3d 110, 121 (1987); *Costco Wholesale Corp. v. Liberty Mut.*
10 *Ins. Co.*, 472 F. Supp. 2d 1183, 1197 (S.D. Cal. 2007).  Thus, Counts Two through Five focus on
11 contracts negotiated in Georgia and that are controlled by Georgia law.
12         Second, the majority of witnesses and documentary evidence for all claims will be in
13 Georgia.  *See* Declaration of David Curley ("Curley Decl.").[1]  Once again, the Complaint
14 concedes that the events surrounding the January 31, 2006 meeting took place in Georgia.  As a
15 result, most of the witnesses with direct knowledge of that meeting are in Georgia.  *See* Curley
16 Decl. ¶¶ 6-7.  In addition, all invoices and other records necessary to adjudicate Counts One and
17 Five – the documents that show whether Home Depot has complied with the MOU and EBA's
18 volume purchasing requirements – are located in Atlanta.  *See* Curley Decl. ¶ 8.  The Home
19 Depot personnel capable of testifying about both the January 31, 2006 meeting and Home
20 Depot's purchasing records are also located in Georgia.  *See* Curley Decl. ¶¶ 3-8.  According to
21 the Complaint, B&O's president is the sole California witness with knowledge of these events.
22 *See* Compl. ¶ 15.

---

[1] Although Mr. Curley has finalized and approved his Declaration for filing, his travel schedule has prevented Home Depot's counsel from procuring an original or scanned copy of a signed signature page for the declaration by the time of this filing. Consistent with the requirements of General Order 45, section X.B, Home Depot will file the Curley Declaration with a scanned signature page as soon as it is available.  To avoid any prejudice to B&O, Home Depot will serve B&O with a copy of the declaration with this filing.

1    For these reasons, the case should be transferred in its entirety to the Northern District of
2 Georgia. In the alternative, the Court should retain jurisdiction over only Count One, while
3 severing and transferring Counts Two through Five.

4 **III.   COUNT TWO FAILS TO STATE A CLAIM FOR RESCISSION OR**
5 **RESTITUTION AND B&O HAS WAIVED ANY RIGHT TO RESCISSION**

6    In Count Two, B&O prays for rescission and restitution of the Refund Agreement
7 because B&O supposedly signed it under "duress, and/or threats, and/or the violation of Rules of
8 Professional Conduct referenced above." Compl. ¶ 22. As a matter of law, none of the facts
9 alleged in the Complaint give rise to a right to rescission or restitution under any legal theory. In
10 addition, B&O has waived these claims by making payments under the Refund Agreement and
11 by waiting nearly eighteen months to seek this relief.

12    **A.   Count Two Fails to Allege Facts Warranting Relief Under Any of the Legal**
13         **Theories Identified in the Complaint**

14    B&O alleges that Home Depot demanded that B&O's president prepare and sign the
15 Refund Agreement during a January 31, 2006 visit to Home Depot's headquarters. Compl. ¶ 15.
16 B&O claims that Home Depot threatened that it would cease doing business with B&O unless
17 B&O entered the Refund Agreement. Compl. ¶ 17. Even though the Complaint concedes that
18 B&O drafted the Refund Agreement and presented it already signed to Home Depot's
19 representative, the Complaint further asserts that Home Depot somehow prevented B&O from
20 consulting with its lawyers while considering whether to sign the Agreement. Compl. ¶ 15. And
21 even though the Complaint concedes "B&O had no direct discussions with [Home Depot's] legal
22 department," the Complaint alleges that Home Depot's lawyers somehow "participated in the
23 process of coercing [B&O]" to enter the Agreement. *See* Compl. ¶¶ 17-18.
24    Even if these implausible allegations were true, they would not give rise to a claim for
25 rescission or restitution under any of the legal theories B&O lists in Count Two.

26
27
28

1. **The Alleged Professional Misconduct by Home Depot's Lawyers Is Facially Implausible and Does Not Give Rise to A Legal Claim By B&O**

B&O's Complaint asserts that the Refund Agreement should be rescinded because Home Depot's lawyers somehow "participated in the process of Home Depot coercing [B&O]" and prevented B&O from consulting its legal counsel. Compl. ¶¶ 15, 17. B&O specifically contends that Home Depot's in-house lawyers violated Georgia Rule of Professional Conduct 4.2(a), which instructs that a lawyer must not communicate with a person represented by another lawyer about the subject of the representation absent consent from opposing counsel. *See* Compl. ¶ 19.[2]

First and foremost, B&O's allegation of professional misconduct is outlandish on its face. The Complaint concedes that during the entire drafting and negotiation of the Refund Agreement "B&O had no direct discussions with [Home Depot's] legal department." Compl. ¶ 18. B&O therefore alleges that Home Depot's ***business employees*** negotiated the Refund Agreement "***as agents of [Home Depot's] legal department***," and that this somehow demonstrates wrongful conduct by Home Depot's lawyers. Compl. ¶ 18 (emphasis added). Moreover, the Complaint infers the nefarious involvement of Home Depot's legal department solely from the approval stamp Home Depot's legal department apparently placed on the Refund Agreement *after* B&O signed it and presented it to Home Depot's business representative. Compl. ¶ 16.

These nonsensical allegations turn the attorney-client relationship on its head: it should go without saying that a corporation's business employees do not negotiate a contract as the agents of their legal counsel. Indeed, if B&O were correct that lawyers who communicate only with their own clients are nevertheless improperly "in indirect communication" with an adverse represented party, no lawyer could ever advise his or her client on any contested matter. As the Supreme Court held recently in *Bell Atlantic Corp. v. Twombly,* __ U.S. __ , 127 S.Ct. 1955, 1974 (2007), a Complaint should be dismissed unless it pleads "enough facts to state a claim to

---

[2] The Complaint also cites the nearly identical Cal. R. of Prof. Conduct § 2-100, but it is unclear why that rule would apply to Home Depot's Atlanta-based lawyers when they were working in Georgia.

1 relief that is plausible on its face." Count Two of B&O's Complaint does not meet that standard,
2 and B&O's implausible accusations of misconduct should be dismissed.

3         Second, an attorney's alleged breach of the professional rules categorically does not give
4 rise to a cause of action. "[W]hile the Code of Professional Responsibility provides specific
5 sanctions for the professional misconduct of the attorneys whom it regulates, it does not establish
6 civil liability of attorneys for their professional misconduct, nor does it create remedies in
7 consequence thereof." *Davis v. Findley*, 262 Ga. 612, 613 (1992). Indeed, the Preamble to the
8 ABA rules expressly provide that "[v]iolation of a Rule should not give rise to a cause of action
9 nor should it create any presumption that a legal duty has been breached." Am. Bar Ass'n Cent.
10 for Prof. Resp., *Annot. Model Rules of Prof. Conduct*, Preamble, ¶ 20 at 4 (5th ed. 2003). B&O
11 cannot identify any case in California or Georgia that voids a contract because a lawyer violated
12 the rules of professional conduct cited in the Complaint. Accordingly, even if B&O's allegations
13 of attorney misconduct were true (or made any sense), they could not support the cause of action
14 alleged in Count Two.

15 **2.     The Complaint Fails To Allege Duress or "Threats" Warranting Relief**

16         As a matter of law, the facts alleged in the Complaint fail to show duress or "threats" that
17 might warrant relief from the Refund Agreement. "One may not void a contract on grounds of
18 duress merely because he entered into it with reluctance, the contract is very disadvantageous to
19 him, the bargaining power of the parties was unequal or there was some unfairness in the
20 negotiations preceding the agreement." *Smith v. Gordon*, 266 Ga. App. 814, 815-16 (2004); *see
21 also Ackerman v. First Nat'l Bank*, 239 Ga. App. 304, 305 (1999) ("Economic distress does not
22 constitute legal duress"). Rather, a contract may be rescinded based on duress only if a party's
23 consent was induced by "imprisonment, threats, or other acts by which the free will of the party
24 is restrained." O.C.G.A. § 13-5-6; *Smith*, 266 Ga. App. at 815-16. Indeed, although Georgia
25 theoretically recognizes "business compulsion" or "economic duress" as grounds for rescission,
26 "***no Georgia decision [has voided] a contract on the theory of economic duress***." *Cooperative*
27
28

*Res. Ctr., Inc. v. Southeast Rural Comty. Assistance Project, Inc*., 256 Ga. App. 719, 720-721 (2002) (emphasis added). [3]

Of course, the Complaint makes no allegation that Home Depot imprisoned, controlled, or otherwise restrained the free will of B&O's president.  At most, the Complaint alleges that Home Depot threatened to discontinue its business relationship with B&O, a multi-million dollar manufacturing company, unless B&O signed the Refund Agreement.  Compl. ¶¶ 15, 17.  But a threatened action "must be wrongful to constitute duress and it is not duress to threaten to do what one has a legal right to do." *Mobley v. Coast House, Ltd*., 182 Ga. App. 305, 307 (1987).  At the time Home Depot supposedly threatened to cease "future business dealings.  Home Depot was under no obligation to enter into "future business dealings" with B&O, and the Complaint makes no allegation to the contrary.  Thus, even assuming Home Depot made the threats B&O alleged, those threats were not unlawful and do not rise to the severe level of coercion required to void a contract.

### B.   B&O Has Waived Any Right To Rescission

Even if B&O could overcome these defects, B&O has waived the relief it seeks in Count Three by delaying in repudiating and by ratifying the Refund Agreement.  A party to a contract "waive[s] his claim of duress when he ratifie[s] the . . . contract by accepting benefits and performing under it." *Tidwell v. Critz*, 248 Ga. 201, 207 (1981).[4]  As the Complaint concedes, B&O not only drafted the Refund Agreement on its own letterhead and presented the signed Refund Agreement for Home Depot for execution, B&O acknowledged its duty to refund Home Depot for undelivered products, made payments to Home Depot pursuant to the Refund

---

[3]   *See also Sabella v. Litchfield*, 274 Cal. App. 2d 195, 197 (1969) (stating that "the use of economic pressure . . . does not constitute duress, provided illegal means are not used," and holding further that a threat to cause economic harm through legal means "[is] not an act of duress or undue influence"); *CrossTalk Productions, Inc. v. Jacobson*, 65 Cal. App. 4th 631, 645 (1998) (holding that a claim of economic duress arises only from wrongful, coercive acts such as "the assertion of a claim known to be false [or] a bad faith threat to breach a contract").

[4]   *See also In re Marriage of Burkle*,139 Cal. App. 4th 712, 751 (2006) (duress and undue influence claims are waived when party unreasonably delays in repudiating the contract or ratifies the contract through conduct); Cal. Civ. Code § 1588 ("A contract which is voidable solely for want of due consent, may be ratified by a subsequent consent.").

1  Agreement, and raised no objection to the Refund Agreement before it filed suit.  *See* Compl. ¶
2  15 (acknowledging that B&O drafted the Refund Agreement), ¶ 21 (demanding "restitution of all
3  amounts [B&O] paid" under the Refund Agreement).

4        B&O attempts to plead around this waiver problem by alleging that B&O's "continuing
5  dependence on [Home Depot] for its economic survival" forced B&O to delay repudiating the
6  Refund Agreement. Compl. ¶ 22.  But B&O alleges no wrongful conduct by Home Depot (or its
7  lawyers) after January 31, 2006.  *See* Compl. ¶¶ 15-19.   Thus, prior to filing this lawsuit, B&O
8  had nearly eighteen months to recognize that it was supposedly coerced into signing the Refund
9  Agreement and to repudiate the Agreement on that basis.  B&O's failure to do so is fatal to its
10 claim.  *See Woods v. Wright*, 163 Ga. App. 124, 126 (1982) ("assuming the appellants might
11 have had a duress defense to enable them to void their note, they waived it and ratified their
12 obligation by subsequently making a partial payment when any duress by the seller in increasing
13 his terms of sale was at an end.").  B&O apparently claims that because Home Depot was B&O's
14 biggest customer, B&O was under ongoing duress from Home Depot that empowered B&O to
15 void any contract with Home Depot at any time.  That cannot be the law, and the cases cited
16 above specifically foreclose economic dependency or distress as grounds for rescission.

17 **IV.  COUNT THREE SHOULD BE DISMISSED BECAUSE HOME DEPOT HAS**
18      **FULFILLED THE ALLEGED PROMISE AND BECAUSE THE PROMISE IS**
19      **UNENFORCEABLE**

20       Count Three of B&O's Complaint seeks to enforce an alleged promise, made in
21 connection with negotiation of the January 31, 2006 Refund Agreement, that Home Depot would
22 give "substantial quantities of business" to B&O "in the future."  *See* Compl. ¶ 17.  As a matter
23 of law, B&O can state no claim for promissory estoppel because the Complaint concedes facts
24 that show Home Depot subsequently agreed to provide "substantial business" to B&O pursuant
25 to the EBA executed in June 2006.  *See* Compl. ¶ 30; EBA at 30.  In addition, the promise
26 alleged in Count Three is unenforceable as a matter of law because it does not satisfy the statute
27 of frauds and because it is hopelessly indefinite.
28

150336          10
B&O MANUFACTURING, INC. v. HOME DEPOT U.S.A., INC.    [DEFENDANT'S NOTICE OF MOTION AND
USDC Case No. C07 02864-JSW    MOTION TO (1) TRANSFER VENUE]

1  **A.    The Complaint Admits that Home Depot Awarded B&O "Substantial Business"**

2  Count Three alleges that Home Depot broke a January 31, 2006 promise to provide B&O
3  with "substantial quantities of business . . . in the future." Compl. ¶¶ 25, 27. Yet this promissory
4  estoppel claim is immediately followed by Count Four, wherein B&O acknowledges that in June
5  2006, Home Depot and B&O entered into the EBA. *See* Compl. ¶ 30; *see also* EBA. Under the
6  EBA, Home Depot awarded B&O "substantial quantities of business," by committing to buy
7  ***75% of its new store safety netting*** from B&O starting April 1, 2006. *See* Compl. ¶ 33; EBA at
8  30. Before that, Home Depot was purchasing ***50% of its new store safety netting*** from B&O
9  pursuant to the MOU, which expired on March 31, 2006. *See* MOU at ¶ 1(b). In other words,
10 there has not been a single day subsequent to January 31, 2006 on which Home Depot was not
11 providing B&O business that meets any definition of "substantial." The Complaint even admits
12 that for "the past thirteen years, [Home Depot] has been, cumulatively, by far, [B&O's] biggest
13 customer." *See* Compl. ¶ 14.

14 B&O cannot sue for detrimental reliance on a promise that even B&O concedes Home
15 Depot fulfilled. Of course, B&O also contends that Home Depot breached its commitments in
16 the MOU and EBA to purchase certain volumes of product. *See* Compl. Counts One and Five.
17 But these claims are for breach of contract, not promissory estoppel. Counts One and Five
18 preclude additional relief under Count Three because "[p]romissory estoppel is not a doctrine
19 designed to give a party to a negotiated commercial bargain a second bite at the apple in the
20 event it fails to prove breach of contract." *See Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th
21 Cir. 1984).

22 **B.    The Alleged Oral Promise to Give B&O "Substantial Business" is Unenforceable**
23 **Under the Statute of Frauds**

24 Even if Home Depot had broken an oral promise to give "substantial business" to B&O,
25 that promise would be unenforceable under the statute of frauds. "[A] contract for the sale of
26 goods for the price of $500.00 or more is not enforceable by way of action or defense unless
27 there is some writing sufficient to indicate that a contract for sale has been made between the
28

1  parties and signed by the party against whom enforcement is sought or by his authorized agent or
2  broker." O.C.G.A. § 11-2-201(1).[5]  Because a promise to purchase goods is subject to the
3  U.C.C.'s statute of frauds, promissory estoppel is not available to enforce the promise alleged by
4  B&O.  *See C.R. Fedrick, Inc. v. Borg-Warner Corp.*, 552 F.2d 852, 856-57 (9th Cir. 1977)
5  (finding that U.C.C. § 2-201 precludes a claim of promissory estoppel); *FMC Finance Corp. v.*
6  *Reed*, 592 F.2d 238, 243 (5th Cir. 1979) (rejecting attempt to use promissory estoppel to avoid
7  the U.C.C.'s statute of frauds).  *See also* EBA ¶ 30.0 (merger clause).

**C.     The Alleged Promise is Too Indefinite to Induce Reasonable Reliance**

9  Even if B&O could evade the Statute of Frauds, B&O cannot have reasonably relied on a
10  promise as vague and indefinite as that alleged in Count Three.  Home Depot's supposed
11  promise to provide "substantial quantities of business" to B&O "in the future" fails to specify
12  (1) which products Home Depot would purchase; (2) when "in the future" Home Depot would
13  make these purchases; (3) what price Home Depot would pay; or (4) what quantity would qualify
14  as "substantial."  "Reliance on such an indefinite representation would be unjustified and
15  therefore incapable of satisfying the inducement element necessary for a valid estoppel defense."
16  *See American Viking Contractors, Inc. v. Scribner Equip. Co.*, 745 F.2d 1365, 1372 (11th Cir.
17  1984) (citing Georgia law); *see also Armstrong v. Rohm & Haas Co.*, 349 F. Supp. 2d 71, 82 (D.
18  Mass. 2004) (finding that a promise to give plaintiffs "all the work they could handle" was "too
19  vague and indefinite to induce reasonable reliance because [it] fail[s] to include any essential
20  terms of an agreement for services.").

21  B&O attempts to save its promissory estoppel claim by alleging that "[t]he long term
22  course of dealing between B&O and [Home Depot]" establishes the terms of Home Depot's
23  promise to give B&O "substantial business."  But that long term course of dealing is codified in
24  sales contracts, namely the MOU and the EBA.  Moreover, the EBA contains a merger clause
25  that specifically states that "[n]either party has relied on any statements, representations or
26  communications that are not contained in this agreement," and that the EBA supersedes all prior

---

[5]     *See also* Cal. Comm. Code § 2201(1) (same as O.C.G.A. § 11-2-201(1)); U.C.C. § 2-201(1) (same).

1  agreements and representations. EBA ¶ 30.0. B&O's attempt to enforce a vague oral promise
2  apart from those written contracts should be dismissed.

3  **V.    COUNT FOUR FAILS TO STATE A CLAIM FOR DECLARATORY RELIEF**
4  **AND THE EBA ALLOWS HOME DEPOT TO TERMINATE WITHOUT CAUSE**

5  Count Four seeks a declaratory judgment stating (1) that Home Depot may not terminate
6  the EBA; and (2) that termination of the EBA triggers a "retroactive modification" of the EBA's
7  pricing terms. *See* Compl. ¶¶ 33-35. The EBA forecloses both claims. Paragraph 3.1(b) of the
8  EBA states explicitly that "Home Depot may terminate this Agreement without cause, upon sixty
9  (60) days prior written notice to [B&O]." EBA ¶ 3.1(b). B&O points out language from the
10 pricing exhibit to the EBA stating that "in the event of any conflict or discrepancy between the
11 terms or provisions of the EBA and this Exhibit A-1, this Exhibit A-1 shall control and govern."
12 Compl. ¶ 33; EBA at Exh. A-1. But there is no "conflict or discrepancy" between Exhibit A-1
13 and the EBA's termination provision. Exhibit A-1 sets forth the volume and prices of purchases
14 under the EBA; the Exhibit says nothing at all about the term of the contract or the conditions
15 under which Home Depot may terminate it. B&O's assertion that the volume purchasing clause
16 of Exhibit A-1 contradicts and therefore supersedes the EBA's termination clause is nonsensical,
17 as it implies that Exhibit A-1 voids nearly every term in the EBA. B&O's additional claim that
18 termination triggers "retroactive modification" of the pricing of the EBA is pulled out of thin air;
19 no clause of the EBA or its Exhibit even hints at the availability of such a remedy. To adopt
20 B&O's arguments would utterly eviscerate the plain language of the EBA.

21 Moreover, even if B&O's construction of the EBA had any merit, "[d]eclaratory relief
22 should be denied when it will neither aid in clarifying and settling legal relations in issue nor
23 terminate the proceedings and afford the parties relief from the uncertainty and controversy they
24 faced." *Greater L.A. Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1112 (9th Cir. 1987).
25 "Declaratory relief is not available if its sole efficacy would be as res judicata in a subsequent
26 state court action for retroactive damages or restitution." *Bethel Native Corp. v. Department of*
27 *Interior*, 208 F.3d 1171, 1177 (9th Cir. 2000). Because Home Depot has already exercised its
28

1  right to terminate the EBA, there is no uncertainty that could be clarified by a declaratory
2  judgment, nor would a declaratory judgment end the proceedings with respect to the parties'
3  duties and damages under the EBA.  If, as B&O alleges, Home Depot has no contractual right to
4  terminate, B&O must raise that argument in a breach of contract action.

5  **VI.   COUNTS FOUR AND FIVE SHOULD BE DISMISSED BECAUSE MEDIATION**
6  **        IS A CONDITION PRECEDENT TO FILING SUIT UNDER THE EBA**

7  Where a contract states that mediation is a condition precedent to the right to sue under
8  the contract, a party's failure to submit its claims to mediation prior to filing suit warrants
9  dismissal. *Gould v. Gould*, 240 Ga. App. 481, 482 (1999).  The EBA explicitly states that
10 mediation is a "condition precedent to the institution of any action regarding disputes arising
11 under or in connection with this agreement" unless the action seeks "injunctive or other
12 equitable relief." EBA ¶ 17.  Because the Complaint concedes that B&O's EBA claims have not
13 been submitted to mediation, Counts Four and Five should be dismissed.  *See* Compl. ¶ 31.

14 The Complaint makes two attempts to skirt the EBA's mediation requirement; both are
15 unavailing.  First, the Complaint asserts that Count Four's claim for declaratory relief is "an
16 action in equity" and is therefore outside the scope of the EBA's mediation provision.  Compl. ¶
17 31.  On the contrary, an action seeking a declaratory judgment of contract rights is a legal, not an
18 equitable action: "[t]he fact that the action is in form a declaratory judgment case should not
19 obscure the essentially legal nature of the action."  *Simler v. Conner,* 372 U.S. 221, 223 (1963).

20 Second, the Complaint asserts that Home Depot has waived mediation under the EBA by
21 telling B&O that mediation is premature.  Compl. ¶ 31. That response is entirely consistent with
22 the EBA, which provides a 60-day notice period, *see* EBA ¶ 3.1(b), during which the parties are
23 to unwind their affairs in the event of a termination without cause.  *See* EBA ¶¶ 3.1(c), 3.2.
24 Moreover, the EBA provides that "[n]o term or condition of the Agreement shall be waived or
25 construed to be waived by either party unless such waiver is in writing and signed by an
26 authorized agent of the waiving party."  EBA ¶ 20.0(b).  B&O alleges no facts to support its
27 claim that Home Depot waived the mediation provision.  In any case, the law is clear that a party
28

1  does not waive its defense of failure to satisfy a mediation provision so long as the party raises
2  that defense prior to summary judgment. *See Gould,* 240 Ga. App. at 483. Accordingly, Home
3  Depot retains the right to insist upon mediation as a condition precedent to litigation concerning
4  the EBA.

## CONCLUSION

6  For the reasons set forth above, this case should be transferred to the Northern District of
7  Georgia. In the alternative, the Court should dismiss Counts Two through Five for failure to
8  state a claim.

9  DATED: August 17, 2007         BONDURANT, MIXSON & ELMORE LLP

11  By: /s/ Christopher T. Giovinazzo
    Christopher T. Giovinazzo
    Ronan P. Doherty
12  Attorneys for Defendant
    HOME DEPOT U.S.A., INC.

# CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2007 I have electronically filed the within and foregoing **DEFENDANT'S NOTICE OF MOTION AND MOTION TO (1) TRANSFER VENUE TO THE NORTHERN DISTRICT OF GEORGIA AND (2) DISMISS COUNTS TWO THROUGH FIVE OF PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEREOF** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record, and by U.S. mail, postage prepaid thereon, addressed as follows:

> Paul E. Rice, Esq.
> Rice & Bronitsky
> 350 Cambridge Avenue, Suite 225
> Palo Alto, CA  94306

/s/Christopher T. Giovinazzo
Christopher T. Giovinazzo