SEDGWICK, DETERT, MORAN & ARNOLD LLP
STEVEN ROLAND  (Bar No. 108097)
AMBER RYE BRUMFIEL  (Bar No. 215181)
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

BONDURANT, MIXSON & ELMORE, LLP
RONAN P. DOHERTY (*Pro Hac Vice*)
CHRISTOPHER T. GIOVINAZZO (*Pro Hac Vice*)
3900 One Atlantic Center
1201 West Peachtree Street NW, Suite 3900
Atlanta, Georgia  30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

Attorneys for Defendant
HOME DEPOT U.S.A., INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| B&O MANUFACTURING, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>HOME DEPOT U.S.A., INC.,<br><br>    Defendant. | CASE NO. C07 02864 JSW<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO (1) TRANSFER VENUE TO THE NORTHERN DISTRICT OF GEORGIA AND (2) DISMISS COUNTS TWO THROUGH FIVE OF PLAINTIFF'S SECOND AMENDED COMPLAINT** |

# **TABLE OF CONTENTS**

TABLE OF OF CONTENTS .................................................................................................... i

TABLE OF OF AUTHORITIES ........................................................................................ ii, iii

I.   SUMMARY OF ARGUMENT ................................................................................... 1

II.  THE COURT SHOULD TRANSFER THE CASE TO GEORGIA ...................................... 1

    A.   The MOU's Forum Selection Clause Is No Obstacle To Transfer .............................. 2

    B.   The Relevant Agreements Were Negotiated and Executed in Georgia ........................ 2

    C.   Most of the Relevant Witnesses and Evidence Are Located in Georgia ...................... 4

    D.   B&O Cannot Avoid Transfer By Sub-Dividing its only California Claim .................. 5

III. THE COURT SHOULD DISMISS B&O'S COUNTS TWO THROUGH FIVE ................. 7

    A.   Count Two Fails To State A Claim ................................................................................ 8

        1.   The Rules of Professional Conduct Do Not Give Rise To Any Cause of Action ............................................................................ 7

        2.   B&O Has Not Alleged a Breach of the Rules of Professional Conduct ............................................................................. 7

        3.   B&O Has Not Alleged Facts That Constitute Duress .................................. 9

        4.   B&O Ratified the Refund Agreement ........................................................ 10

    B.   Count Three Fails To State A Claim For Promissory Estoppel ................................. 11

    C.   B&O's Count Four Contradicts the EBA's Unambiguous Terms ............................. 13

    D.   Counts Four and Five Should Be Dismissed for Failure To Mediate ......................... 14

CONCLUSION ............................................................................................................... 14

152156

i

*B&O MANUFACTURING, INC. v. HOME DEPOT U.S.A., INC.*   [REPLY BR. IN SUPPORT OF DEF.'S MOTION TO
USDC Case No. C07 02864-JSW                          TRANSFER VENUE AND DISMISS COUNTS TWO
                                                    THROUGH FIVE OF PL.'S SECOND AM. COMPLAINT]

# TABLE OF AUTHORITIES

**Cases**

*Brown v. Petroleum Helicopters, Inc.*, 347 F. Supp. 2d 370 (S.D. Tex. 2004) ............................. 2

*Gould v. Gould*, 240 Ga. App. 481 (1999) ................................................................................. 14

*Gulfstream Aerospace Services Corp. v. U.S. Aviation Underwriters, Inc.*,
   280 Ga. App. 747 (2006) ....................................................................................................... 13

*Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542 (9th Cir.
   1990) ..................................................................................................................................... 6, 9

*Harrell v. United States*, 13 F.3d 232 (7th Cir. 1993) ................................................................. 9

*Hubbell Inc. v. Pass & Seymour, Inc.,* 883 F. Supp. 955 (S.D.N.Y. 1995) ................................. 1

*Jenkins Brick Co. v. Bremer*, 321 F.3d 1366 (11th Cir. 2003) ............................................... 3, 4

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) ........................................ 2, 3, 6

*Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179 (1998) ................................................................ 12

*Mitchell v. Backus Cadillac-Pontiac, Inc.*, 274 Ga. App. 330 (2005) ......................................... 6

*Nickell v. IAG Fed. Credit Union*, 213 Ga. App. 516 (1994) ...................................................... 6

*Pabian Outdoor-Aiken, Inc. v. Dockery* 253 Ga. App. 729 (2002) ........................................... 11

*Papasan v. Allain*, 478 U.S. 265 (1986) ..................................................................................... 7

*Netbula, LLC v. Bindview Dev. Corp.*, ___ F. Supp. 2d ___, 2007 WL 2807597
   (N.D. Cal. Sept. 10, 2007) ....................................................................................................... 9

*Stewart Org. v. Ricoh Corp.*, 487 U.S. 22 (1988) ....................................................................... 2

*Tampa Bay Fin., Inc. v. Nordeen*, 272 Ga. App. 529 (2005) .................................................... 12

*Ventress v. Japan Airlines*, 486 F.3d 1111 (9th Cir. 2007) ........................................................ 4

*Walker v. KFC Corp.*, 728 F.2d 1215 (9th Cir. 1984) ............................................................... 11

*Wnuk v. Doyle*, 276 Ga. App. 550 (2005) ................................................................................. 12

**Statutes**

28 U.S.C. § 1404(a) ...................................................................................................................... 2

Cal. R. Prof. Conduct 2-100 ......................................................................................................... 8

O.C.G.A. § 11-2-201(2) .............................................................................................................. 12

O.C.G.A. § 11-2-208 ................................................................................................................... 12

1  **Rules**

2  Ann. Model Rules of Prof. Conduct (5th ed. 2003) ..........................................................................8

3  Cal. Code Civ. P. § 1856(a) ........................................................................................................ 12

4  Ga. R. Prof. Conduct 4.2 ..............................................................................................................8

5  Fed. R. Civ. P. 26..........................................................................................................................5

6  **Other**

7  Rest. 2d. Contr. § 149, cmt a.........................................................................................................6

**I.    SUMMARY OFARGUMENT**

This is a lawsuit that never should have been filed.  Now that it has been filed, however, the case should be transferred to Georgia because that is where the dispute's center of gravity lies.  B&O does not contest this Court's authority to transfer the entire case.  Nor does B&O dispute that its Second Amended Complaint ("Complaint") adds a series of claims subject to an express Georgia forum selection clause.  Nor can B&O dispute that all the negotiations and events at issue here took place in Atlanta, Georgia.  And even though B&O has raised a laundry list of evidentiary objections to David Curley's declaration testimony concerning the location of the relevant documents and witnesses in Georgia, B&O raises no serious question about the accuracy of that testimony.  Rather, B&O seeks refuge in red-herrings about the location of B&O's tax records and its plant.  Because this dispute has nothing to do with those records or B&O's plant, the Court can and should grant Home Depot's motion to transfer this case to Georgia.  If the Court grants Home Depot's transfer motion, it need not proceed to decide the other issues presented on Home Depot's Motion to Dismiss.

In the event the Court declines to transfer the case, however, the Court should proceed to dismiss Counts Two through Five of the Complaint.  B&O's Opposition repeatedly complains that Home Depot's Motion to Dismiss relies on evidence not before the Court.  But Home Depot understands that its Motion to Dismiss turns solely on the sufficiency of B&O's allegations and the documents B&O attached to its Complaint.  Despite having an opportunity to correct and supplement its pleading after receiving Home Depot's initial Motion to Dismiss, B&O's allegations still fall far short of stating a claim for which relief can be granted.  Accordingly, the Court should dismiss Counts Two through Five with prejudice.

**II.   THE COURT SHOULD TRANSFER THE CASE TO GEORGIA**

"[T]he core determination" of a § 1404(a) motion to transfer a case from one federal court to another "is the center of gravity of the litigation." *Hubbell Inc. v. Pass & Seymour, Inc.*, 883 F. Supp. 955, 962 (S.D.N.Y. 1995).  B&O's allegations, the contracts and the testimony about the location of the relevant documents and witnesses all demonstrate that this dispute's

152156                                                            1
*B&O MANUFACTURING, INC. v. HOME DEPOT U.S.A., INC.*          [REPLY BR. IN SUPPORT OF DEF.'S MOTION TO
USDC Case No. C07 02864-JSW                                    TRANSFER VENUE AND DISMISS COUNTS TWO
                                                               THROUGH FIVE OF PL.'S SECOND AM. COMPLAINT]

center of gravity lies in the Northern District of Georgia. At root, B&O's Complaint concerns B&O's allegations that (1) Home Depot has not purchased sufficient quantities of product under a series of agreements or alleged promises made in Atlanta, Georgia, and (2) Home Depot's representatives allegedly coerced B&O's president into preparing and signing another agreement during a meeting in Atlanta, Georgia. Because the contracts and events at issue all took place in Georgia, this case should be litigated there as well.

### A. The MOU's Forum Selection Clause Is No Obstacle to Transfer.

Both parties have acknowledged the competing forum selection clauses in the Memorandum of Understanding ("MOU") that is the subject of Count One and the Expense Buying Agreement ("EBA") that is the subject of Counts Four and Five. Neither party contends that the law requires the Court to enforce both forum selection clauses by severing the claims and directing the parties to litigate in two separate courts. In fact, B&O's Complaint affirmatively alleges that the dispute should be resolved in a single case in one courtroom. *See* Second Amended Complaint ("Compl.") ¶ 4. In addition, B&O appears to recognize that this Court has the discretion to conduct its own 28 U.S.C. § 1404(a) analysis in this case despite the MOU's provision that disputes under that agreement shall be determined in this Court.[1] The only disagreement, therefore, is whether the court should exercise that discretion to transfer the case to Georgia after making "an individualized, case-by-case consideration of [the] convenience and fairness" of a transfer. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

### B. The Relevant Agreements Were Negotiated and Executed in Georgia.

Under *Jones*, the first factor to consider in evaluating a transfer is "the location where the relevant agreements were negotiated and executed." *Id.* at 498. Based on B&O's Complaint and its Opposition, there appears to be no dispute that the contracts attached to B&O's Complaint

---

[1] *See Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988) (forum selection clause is not dispositive); *Brown v. Petroleum Helicopters, Inc.*, 347 F. Supp. 2d 370, 373 (S.D. Tex. 2004) (denying a change of venue despite forum selection clause). B&O's Opposition correctly notes that *Brown* did not involve "dueling" forum clauses. Rather, the case stands for the proposition that even an enforceable forum selection clause is not dispositive under § 1404(a).

152156

2

*B&O MANUFACTURING, INC. v. HOME DEPOT U.S.A., INC.*
USDC Case No. C07 02864-JSW

[REPLY BR. IN SUPPORT OF DEF.'S MOTION TO TRANSFER VENUE AND DISMISS COUNTS TWO THROUGH FIVE OF PL.'S SECOND AM. COMPLAINT]

1  were negotiated and executed in Georgia.  For example, the Complaint affirmatively alleges that
2  "B&O's counsel traveled to [Home Depot's] headquarters in Atlanta, Georgia, for a meeting that
3  ultimately resulted in the execution of Exhibit 1 [the MOU]."  Compl. ¶ 18.  The Complaint
4  similarly complains that Home Depot's representatives wrongfully procured B&O's agreement
5  to the Refund Agreement (Exhibit 2) when B&O's President was at Home Depot's Atlanta
6  headquarters.  *Id*. ¶ 15.  In addition, representatives from both companies have now provided
7  testimony that confirms the relevant events took place in Atlanta, Georgia.[2]  And while B&O
8  makes unfounded evidentiary objections to some of David Curley's testimony,[3] B&O does not
9  contest that the discussions that gave rise to B&O's claims about the Refund Agreement took
10 place in Atlanta.

11      Even though B&O's president Michael Calleja has testified by declaration that Home
12 Depot's representatives have traveled to B&O's San Francisco location, he has not testified that
13 those visits had anything to do with the matters now in dispute.  Of course, this Court need only
14 consider the ***relevant*** events in analyzing Home Depot's Motion to Transfer venue.  *See Jones*,
15 211 F.3d at 498 (transfer analysis should consider "the contacts relating to plaintiffs' cause of
16 action").[4]  Because this litigation does not concern B&O's manufacturing process or its facilities,
17 the fact that B&O's factory is in San Francisco is not relevant.  *See* Calleja Decl. ¶¶ 4-5.
18 Similarly, Calleja's testimony that a variety of Home Depot personnel have visited B&O to
19 inspect its plant is not relevant to the proper location for a dispute over the purchasing
20 agreements between the two companies.  *Id.*

21      With respect to the matters in dispute, however, B&O's allegations and Calleja's
22 testimony confirm that this dispute is centered in Georgia.  The Complaint alleges that Calleja

---

[2]  *See* Declaration of David Curley ("Curley Decl.") ¶ 6; Declaration of Michael Calleja ("Calleja Decl.") ¶ 3.

[3]  *See* Home Depot's Responses to Plaintiff's Evidentiary Objection to the Declaration of David Curley.

[4]  *Accord Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003) (venue analysis limited to the "events that give rise to a claim").

1 traveled to Home Depot's headquarters for the critical meeting at issue here. Compl. ¶¶ 15-19.
2 In addition Calleja testified that "B&O's contacts with Georgia [have] had to do with business
3 negotiations, payments, et cetera." Calleja Decl. ¶ 6. Because those are the very matters B&O's
4 Complaint puts at issue, Calleja's testimony supports Home Depot's Motion to Transfer.

### C. Most of the Relevant Witnesses and Evidence Are Located in Georgia.

6  Because the events at issue here took place in Georgia, the majority of relevant witnesses
7 and records will be found in Georgia as well. The convenience of accessing these sources of
8 proof is a compelling reason to transfer this case to Georgia. *See Ventress v. Japan Airlines*, 486
9 F.3d 1111, 1119 (9th Cir. 2007). Acknowledging the importance of this factor, B&O's
10 Opposition attempts to manufacture a dispute over the relative convenience of litigating in
11 California. But B&O's declarations do not indicate that the relevant documents or witnesses can
12 be found only in California. Instead, B&O attempts to confuse the issue by submitting a
13 declaration concerning the location of its own accounting and tax records. *See* Declaration of
14 Jerry J. Krause ¶ 3. Once again, however, only the events and facts that give rise to B&O's
15 claims are relevant to the Court's transfer analysis. *Cf. Jenkins*, 321 F.3d at 1372. Because
16 B&O's tax returns are not the subject matter of this dispute, the location of those returns should
17 not influence the Court's transfer decision. *See Jones,* 211 F.3d at 499.

18  Instead, this dispute concerns B&O claim that Home Depot has not purchased sufficient
19 quantities of B&O product relative to Home Depot's overall needs or to match some other
20 alleged commitment. S*ee* Compl. ¶¶ 6, 7, 10, 37. As a result, those claims turn exclusively on
21 Home Depot's purchasing history and cannot be resolved with B&O's records alone. David
22 Curley has testified that those Home Depot records and the witnesses necessary to explain Home
23 Depot's purchasing history are located in Atlanta, Georgia. *See* Curley Decl. ¶ 8.

24  B&O's vague observation that Home Depot also generates or maintains purchasing
25 records in India is another red herring. Even if the Court had any competent evidence that any of
26 the records relevant to this dispute were in India, rather than in Georgia as Mr. Curley has
27 testified, that would do nothing to alter the relative burdens of litigating in California or Georgia.

In both this Court and the Northern District of Georgia, Home Depot is subject to the federal discovery rules and will be expected to produce any relevant records within its possession, custody or control for inspection at its corporate headquarters in Atlanta, Georgia. *See* Fed. R. Civ. P. 26.

Nor can B&O dispute that the majority of the relevant witnesses reside in Georgia. Other than B&O's president and its lawyer, both of whom reside in California but have traveled to Georgia repeatedly in connection with the matters at issue in this case,[5] B&O has failed to identify any other relevant witness who resides in California. By contrast, Home Depot has submitted sworn testimony that the relevant Home Depot witnesses reside in Georgia. *See* Curley Decl. ¶¶ 6-8. B&O complains that Home Depot has failed to "identify relevant witnesses, state their location and describe their testimony and its relevance." B&O's Opposition Brief ("B&O Opp.") at 2. But David Curley's declaration names himself as a witness and identifies additional Home Depot personnel in specific departments as possible relevant witnesses. Curley Decl. ¶¶ 3-8. Curley's declaration further testifies that these Home Depot personnel are based in Georgia, *id.*, and identifies the testimony they could give about specific aspects of Home Depot's records, negotiations, and purchase history. *Id.* As a result, Curley's declaration demonstrates that the majority of witnesses and evidence required to litigate *all* B&O's breach of contract claims are located in Atlanta. *See id*. ¶¶ 3-8.

**D.     B&O Cannot Avoid Transfer By Sub-Dividing its Only California Claim.**

Confronted with indisputable evidence that the relevant contracts were negotiated in Georgia, the relevant events took place in Georgia, and the majority of the relevant witnesses and documents are located in Georgia, B&O resorts to semantics in its Opposition. For example, B&O refuses to acknowledge that Count I, a claim for breach of the only contract with a California choice of law clause, represents the only claim governed by California law. Instead, B&O attempts to multiply the significance of that claim in the transfer analysis by parsing its claim into four "distinct 'claims at issue'." B&O Opp. at 2. But B&O never comes to grip with

---

[5]     *See* Compl. ¶¶ 15, 18; Calleja Decl. ¶ 3.

the fact that each of these issues concern Home Depot's purchase history and that most of the relevant evidence and witnesses on those matters are in Georgia, not California.

B&O's attempt to shift Counts II and III to the California side of the ledger fares no better. B&O argues that the Refund Agreement must be governed by California law because B&O contends it is a modification of the MOU, which has a California choice of law clause. But B&O has not brought a claim for relief under the Refund Agreement. As a result, it makes no difference whether Georgia or California law governs the interpretation of that agreement. Instead, Counts II and III seek equitable relief for alleged improper conduct that took place in connection with the execution of the Refund Agreement. As a result, neither Count Two nor Count Three would be subject to a choice of law or forum selection clause in the Refund Agreement even if one existed or could be incorporated from the MOU. *See, e.g., Mitchell v. Backus Cadillac-Pontiac, Inc.*, 274 Ga. App. 330, 331-34 (2005) (distinguishing between claim for breach of contract and equitable action for rescission); *Nickell v. IAG Fed. Credit Union*, 213 Ga. App. 516, 519 (1994) (holding that "[a] promissory estoppel theory lies outside the contract" and is not controlled by a related contract's choice-of-law clause). [6]

Moreover, B&O cannot dispute that Counts Two and Three focus entirely on events that took place during a meeting in Atlanta. *See* Compl. ¶¶ 15, 18; Curley Decl. ¶ 6; Calleja Decl. ¶ 3. At this meeting, Home Depot allegedly coerced B&O's president into signing the Refund Agreement (Count Two) and promised him "substantial quantities of business" at some time "in the future" (Count Three). *See* Compl. ¶ 15. The only witness to these events from outside of Georgia is Mr. Calleja, who voluntarily traveled to Georgia for the sole purpose of attending this meeting.

In sum, the § 1404 factors delineated in *Jones v. GNC Franchising, Inc.*, strongly favor transfer to the Northern District of Georgia. That result is entirely equitable because B&O

---

[6] *See* B&O Opp. at 2-3. In any event, B&O's premise is wrong because "[w]here one contract modifies another, the terms of the new contract are found partly in the original contract and partly in the modifying contract." Rest. 2d. Contr. § 149, cmt. a. Because the Refund Agreement here does not even mention the MOU, let alone incorporate or alter its terms, it does not modify the MOU.

1  clearly contemplated to litigation in Georgia when it began doing millions of dollars in business

2  with Home Depot years ago and when it entered into the EBA in 2006.  That contract, which

3  B&O has now invoked in its Complaint, contains an express forum selection clause that

4  designates Georgia as the place for all claims that arise "in connection" with the contract.  EBA,

5  Compl. Exh. 3, ¶¶ 16-17.  The other Counts of B&O's Complaint concern additional contracts

6  that the parties negotiated in Atlanta and events that B&O alleges took place in Georgia. As a

7  result, the majority of evidence and documents relevant to all claims is located in Georgia.

8  Because B&O has made no attempt to demonstrate that it would be unduly burdensome to

9  litigate this case where the events took place and the evidence resides, the Court should transfer

10  this case to the Northern District of Georgia for all further proceedings.

11  **III.    THE COURT SHOULD DISMISS B&O'S COUNTS TWO THROUGH FIVE**

12  In the event the Court declines to transfer the case, the Court should proceed to rule on

13  Home Depot's Motion to Dismiss Counts Two through Five.  As the Court may recall, this is

14  Home Depot's second Motion to Dismiss.  Rather than oppose Home Depot's initial motion,

15  B&O elected to amend its Complaint on August 3, 2007.  *See* Dkt No. 21.  Despite having ample

16  opportunity to plead its claims, Counts Two through Five do not state a claim and should be

17  dismissed with prejudice pursuant to Rule 12.

18  B&O's Opposition attempts to salvage its claims by embellishing the Complaint and

19  posing hypothetical questions that bear little resemblance to B&O's actual allegations.  For

20  purposes of Home Depot's motion, the Court need only assume the truth of *the Complaint's*

21  factual allegations.  *See Papasan v. Allain*, 478 U.S. 265, 283 (1986).  The Court need not accept

22  statements of fact that appear in either party's brief.  Looking only to the Complaint itself and

23  the documents that B&O attached and explicitly referenced therein, it is plain that Counts Two

24  through Five suffer from multiple legal defects and should be dismissed.

25  **A.    Count Two Fails To State A Claim**

26  **1.    The Rules of Professional Conduct Do Not Give Rise to Any Cause of Action.**

27

28

The central allegation of Count Two is that Home Depot's lawyers violated the Professional Rule of Conduct that instructs lawyers not to communicate with a person the lawyer knows to be represented by another lawyer. Ga. R. Prof. Conduct 4.2 (Compl. ¶ 19); *see also* Cal. R. Prof. Conduct 2-100 (same). Although B&O's Opposition goes to great lengths to reinvent its allegations on this claim, the simple answer is that the Rules of Professional Conduct are not a basis for liability against a lawyer or his or her client. The Model Rules of Professional Conduct provide so expressly: "violation of a Rule [of Professional Conduct] should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached." Ann. Model Rules of Prof. Conduct, Preamble ¶ 20 at 4 (5th ed. 2003). B&O's Opposition attempts to limit this proscription to cases that attempt to impose liability on lawyers. But B&O has failed to cite a single case (or any other authority) that relies upon a violation of this Rule of Professional Conduct to void a contract. Absent that authority, Count Two fails to state a claim under California or Georgia and it should be dismissed.

**2.    B&O Has Not Alleged a Breach of the Rules of Professional Conduct.**

Even if B&O could convince the Court that a violation of a lawyer's professional obligation to refrain from contacting represented parties could give rise to a claim for relief, the facts B&O has alleged here would not violate the rule. In fact, B&O's Complaint affirmatively alleges that "B&O had no direct discussions with HD's legal department" concerning B&O's decision to enter into the Refund Agreement. Compl. ¶ 18. That is, the Complaint concedes that Home Depot's lawyers did not engage in the conduct that the rule proscribes and thus defeats Count Two's entire premise.

To rescue this claim, B&O must resort to hypothetical questions about whether a lawyer would violate Rule 4-2 by encouraging a client to urge the represented party to sign a contract

152156    8

*B&O MANUFACTURING, INC. v. HOME DEPOT U.S.A., INC.*    [REPLY BR. IN SUPPORT OF DEF.'S MOTION TO
USDC Case No. C07 02864-JSW    TRANSFER VENUE AND DISMISS COUNTS TWO
    THROUGH FIVE OF PL.'S SECOND AM. COMPLAINT]

without talking to that party's lawyer. The short answer to this line of argument is that B&O's Complaint makes no allegation that even resembles this hypothetical scenario. To rule on Home Depot's Motion to Dismiss, the Court need only consider the allegations in B&O's Complaint. The Court need not—and should not—entertain additional allegations made in B&O's brief. *See Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993) ("a plaintiff cannot amend his complaint by a brief that he files in the district court."); *Netbula, LLC v. Bindview Dev. Corp.*, __ F. Supp. 2d __, 2007 WL 2807597, at *17 (N.D. Cal. Sep. 10, 2007) (same). In any event, even B&O's brief does not allege that any Home Depot lawyer encouraged Home Depot's business representatives to circumvent B&O's counsel, presumably because B&O has no factual basis to make any such allegation—even on information and belief.[7] Because this Court's Article III jurisdiction only extends to real controversies, not hypotheticals, the Court should dismiss Count Two for failure to state a claim.

### 3. B&O Has Not Alleged Facts that Constitute Duress

Home Depot's opening brief cites multiple cases from both Georgia and California holding that the type of economic pressure alleged in the Complaint does not give rise to a claim for rescission or restitution. *See* Home Depot Br. at 8-9. B&O responds that in negotiating the Refund Agreement, Home Depot "used illegal means" and "made a bad faith threat to breach a contract." B&O's brief even asserts that the Complaint "plead[s] a claim for rescission for undue influence," even though the Complaint neglected to mention that "exact phrase." B&O Opp. at 8. Once again, however, B&O cannot avoid dismissal by attempting to plead a different

---

[7] The only allegation of fact (rather than admitted conjecture) that would implicate Home Depot's lawyers in this matter is B&O's allegation that Home Depot's legal department noted its approval on the contract. *See* Compl. ¶ 16. Because B&O attached the contract and has not alleged or argued that the notation was on the contract when Calleja signed and presented it to Home Depot, the Court need not ignore that the notation at issue came after B&O alleges improper (albeit indirect) contact between Home Depot's lawyers and Calleja. *See* Refund Agr., Compl. Exh. 2; *Hal Roach Studios,* 896 F.2d at 1555 n.19.

claim in a brief opposing a motion to dismiss. *See Harrell*, 13 F.3d at 236.[8]

The only economic duress alleged in the Complaint is that Home Depot supposedly threatened it would "abruptly cease all future business dealings with B&O" if B&O did not sign the Refund Agreement. Compl. ¶ 17. But a threat to cease future business dealings is entirely lawful and gives no rise to the claims asserted by B&O. *See* Home Depot Br. at 9. Even if cutting off Home Depot's business with B&O would have given rise to a claim for breach of contract, even that does not rise to the level of misconduct required to support a duress claim. Indeed, B&O all but concedes that it cannot allege the extreme facts that would support a claim for duress under either California or Georgia law.[9]

### 4. B&O Ratified the Refund Agreement

Finally, B&O has failed to refute that it ratified the Refund Agreement by making partial payments according to its terms, long after Calleja left the allegedly coercive atmosphere of Home Depot's Atlanta headquarters. As a matter of law, therefore, B&O has waived the relief sought in Count Two. *See* Compl. ¶¶ 15, 21; Home Depot Br. at 9-10. B&O's Opposition tries to explain its failure to repudiate the Refund Agreement and its payments by arguing that B&O did not know it was coerced into signing the Refund Agreement until some time after these ratifying events. *See* B&O Opp. at 9. Once again, that allegation does not appear in the Complaint. Moreover, the Complaint alleges no coercive coercive conduct against Home Depot after January 31, 2006, the day B&O signed the Refund Agreement. Compl. ¶¶ 15-19.

Instead, the Complaint alleges that Calleja failed to realize he had been contacted (albeit indirectly) by Home Depot's counsel in violation of the Rules of Professional Conduct for many

---

[8] Indeed, B&O's First Amended Complaint alleged undue influence, and Home Depot's first Motion to Dismiss explained in detail why that allegation failed to state a claim as a matter of law. *See* First Am. Compl. ¶ 23; Mot. to Dismiss, Dkt. No. 14, at 8-10. Rather than respond, B&O removed the allegation of undue influence from the Complaint. If the Court nevertheless concludes that Home Depot has Rule 8 notice of such a claim, Home Depot incorporates its previous arguments by reference.

[9] *See* B&O Opp. at 8 (conceding that Calleja was not locked in a room and forced to sign the Refund Agreement at gun-point).

months after he signed the agreement. *Id*. ¶ 20. Although B&O evidently intends that claim to explain why B&O ratified the agreement, B&O makes no allegation that Home Depot did anything to prevent Calleja from uncovering the Rules of Professional Conduct. Moreover, B&O's allegation only serves to underscore the significant distance between a viable duress claim and the facts alleged here. If Calleja did not discover that he had been coerced into signing the Refund Agreement until many months after he signed it, it is difficult to see how he could have been subjected to the type of duress that could void the Refund Agreement.

### B.     Count Three Fails to State a Claim for Promissory Estoppel

In defense of Count Three, B&O's brief incorrectly asserts that Home Depot denies the existence of a contract between the parties. *See* B&O Opp. at 12. On the contrary, Home Depot denies only that *the oral promise that B&O seeks to enforce in Count Three* could amount to a contract or any other binding obligation. Home Depot Br. at 11-12. The parties agree that negotiated, written contracts–the MOU, the Refund Agreement and the EBA–have controlled the parties' relationship at all times relevant to this dispute.

As such, B&O's attempt to distinguish *Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir. 1984), must fail. *Walker* holds that once parties have reached a bargained-for agreement on the subject of an alleged promise, the only claim available is one for breach of contract, not for promissory estoppel. *Id.* Because Home Depot and B&O negotiated and executed the MOU and EBA, B&O's assertion that Home Depot has failed to give B&O "substantial business" can only support a claim for breaching those contracts, not a promissory estoppel claim. *Id.* B&O implies that the Ninth Circuit's *Walker* decision misstates California law, but in fact *Walker* simply affirms numerous California cases cited therein. *See id.* at 1218-1221. Where the parties have reached an agreement supported by consideration on the subject of an alleged promise, a claim for promissory estoppel to enforce that promise is no longer available. *Id.* The same is true under Georgia law. *See Pabian Outdoor-Aiken, Inc. v. Dockery*, 253 Ga. App. 729, 731 (2002) ("The doctrine of promissory estoppel basically substitutes action or forbearance (i.e., reliance) by the promisee for the consideration which would otherwise be lacking.").

1  Count Three also fails as a matter of law because "a promise too indefinite to be enforced
2  under a breach-of-contract theory is too indefinite to be enforced under a promissory estoppel
3  theory." *Wnuk v. Doyle*, 276 Ga. App. 550, 553 (2005).[10]  B&O's Complaint does not allege any
4  of the terms that would be necessary to enforce a promise to provide "substantial quantities of
5  business" to B&O "in the future."  B&O's allegation that "[t]he [parties'] long term course of
6  dealing" provides the missing terms cannot substitute for the terms themselves.  Compl. ¶ 26.[11]
7  *The Complaint itself* must identify the terms of the alleged promise to state a claim for
8  promissory estoppel.  The only "course of dealing" between the parties alleged by B&O is the
9  MOU and EBA; if those are the source of the terms of the promise alleged in Count Three, then
10 Count Three is no different than Count One or Five.

11  Finally, B&O's contention that Count Three survives because "the parties did not intend
12 for the EBA . . . to be a complete expression of their agreement" fails as a matter of law.  B&O
13 Opp. at 13.  The Statute of Frauds requires that contracts for the sale of goods for more than
14 $500 must be in writing, and that is precisely what the parties did here with the EBA.  "[A]ny
15 promises made before the signing of the agreement cannot be used to vary the terms of a valid
16 written agreement purporting to contain the entire agreement of the parties." *See Tampa Bay*
17 *Fin., Inc. v. Nordeen*, 272 Ga. App. 529, 533 (2005).[12]  The EBA includes a merger clause
18 stating that the EBA supersedes all prior agreements and representations, EBA ¶ 30.0, and a
19 clause rejecting the construal of the EBA against its drafter.  *Id.* ¶ 19.0.  As a matter of law, these
20 clauses preclude B&O from circumventing the EBA and seeking to enforce an alleged, indefinite

---

[10]  *See also Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179, 1185 (1998) (citing numerous California cases for the proposition that "among the required elements for promissory estoppel . . . [is] a promise clear and unambiguous in its terms") (citations omitted).

[11]  B&O's references to course of dealing and the parties' status as merchants under the UCC might be relevant to a contract claim, *see* O.C.G.A. §§ 11-2-201(2), 11-2-208, but not the promissory estoppel claim it has asserted.

[12]  *See also* Cal. Code Civ. P. § 1856(a) ("[t]erms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement.").

1 oral promise concerning the same business arrangement codified in the EBA.

2       **C.**      **B&O's Count Four Contradicts the EBA's Unambiguous Terms**

3       Despite the controlling case law governing the availability of declaratory judgments, B&O maintains that a ruling over whether Home Depot has the right to terminate the EBA would be of some aid to the parties. B&O's Opposition, however, does not identify what benefit that ruling would confer now that Home Depot has exercised its right to terminate the contract. If that conduct violates the contract—and it plainly does not—then B&O must bring a claim for breach, not declaratory judgment.

9       In any event, the EBA's plain terms defeat Count Four. Home Depot terminated the EBA pursuant to its explicit right to do so "without cause, upon sixty (60) days . . . notice." *See* EBA ¶ 3.1(b). B&O responds that the EBA's termination clause was effectively revoked by the EBA's Exhibit A, which sets forth volume and pricing terms. B&O Opp. at 14. But Exhibit A says nothing at all about Home Depot's right to terminate the EBA. The clause of Exhibit A B&O cites states only that Home Depot will purchase 75% of new store safety netting from B&O "within the dates specified above." EBA, Exh. A-1, ¶ III. This clause *explicitly incorporates* the EBA's provisions regarding the effective term of the EBA.

17       Moreover, the EBA's effective dates are set forth in a paragraph entitled "Term and Termination." EBA ¶ 3.1. That paragraph includes both the two-year term of the EBA *and* Home Depot's right to terminate without cause. *Id.* Thus, B&O is arguing that the EBA's volume and pricing exhibit implicitly revokes Paragraph 3.1's termination clause, while it simultaneously affirms Paragraph 3.1's two-year term. The canons of contract construction require the Court to give effect to the entire agreement; the parties cannot pick and choose the provisions that they prefer after a dispute arises. *See Gulfstream Aerospace Services Corp. v. U.S. Aviation Underwriters, Inc.*, 280 Ga. App. 747, 756 (2006). Because the exhibit does not say anything about term or termination, the "Term and Termination" clause from the EBA is not in conflict with the Exhibit. Paragraph 3.1(e) of the EBA, which states that any exhibit to the EBA is "co-terminus with" the EBA's term "unless *specifically* noted on the Exhibit," confirms

28

152156      13

*B&O MANUFACTURING, INC. v. HOME DEPOT U.S.A., INC.*     [REPLY BR. IN SUPPORT OF DEF.'S MOTION TO
USDC Case No. C07 02864-JSW                                          TRANSFER VENUE AND DISMISS COUNTS TWO
                                                                                                                  THROUGH FIVE OF PL.'S SECOND AM. COMPLAINT]

1   this common sense construction of the EBA.  EBA ¶ 3.1(e) (emphasis added).

2       Finally, B&O continues to provide no support for its allegation that B&O is entitled to
3   "retroactive modification" of the EBA's pricing upon termination.  Compl. ¶ 34.  Instead, B&O
4   asserts that "this is a matter for evidence as to the discussions between the parties, of custom and
5   practice, and other facts, and not suitable for the pleading stage." B&O Opp. at 14.  But without
6   a viable claim and allegations to support it, B&O cannot progress to these later stages.  Having
7   failed on both counts, the Court should dismiss this claim for relief.

8   **D.    Counts Four and Five Should Be Dismissed for Failure to Mediate**

9       B&O's Complaint and brief assert that Home Depot has waived the EBA's mediation
10  requirement.  Compl. ¶ 31; EBA ¶ 17.0; B&O Opp. at 15.  But the EBA explicitly requires any
11  waiver to be "in writing and signed by an authorized agent of the waiving party."  EBA ¶
12  20.0(b).  B&O has not alleged a written waiver of mediation or produced one in opposition to
13  Home Depot's motion. Because B&O has failed to meet a condition precedent to litigation under
14  the EBA, Counts Four and Five should be dismissed.  EBA ¶ 17; *Gould v. Gould*, 240 Ga. App.
15  481, 482 (1999).

16      B&O cannot rescue these claims from dismissal by attempting to introduce testimony
17  concerning the parties' post-Complaint discussions about mediation.  Because this issue is before
18  the Court on a Rule 12 motion, the Declaration of Paul Rice is not relevant.  For the record,
19  however, the Court should know that Home Depot has not waived (or even "declined")
20  mediation. As the correspondence between the parties will confirm, Home Depot has indicated
21  that it believes pre-litigation mediation could be tremendously useful in this matter.  *See*
22  Declaration of Christopher T. Giovinazzo ¶ 8, Exh. D.

23  **CONCLUSION**

24      For the reasons set forth above, this case should be transferred to the Northern District of
25  Georgia.  In the alternative, the Court should dismiss Counts Two through Five for failure to
26  state a claim.

27

28

1  DATED: October 12, 2007        BONDURANT, MIXSON & ELMORE LLP

2

3                                  By: /s/Christopher T. Giovinazzo
                                       Christopher T. Giovinazzo
                                       Ronan P. Doherty
4                                      Attorneys for Defendant
                                       HOME DEPOT U.S.A., INC.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2007 I have electronically filed the within and foregoing **REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO (1) TRANSFER VENUE TO THE NORTHERN DISTRICT OF GEORGIA AND (2) DISMISS COUNTS TWO THROUGH FIVE OF PLAINTIFF'S SECOND AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record, and by U.S. mail, postage prepaid thereon, addressed as follows:

>Paul E. Rice, Esq.
>Rice & Bronitsky
>350 Cambridge Avenue, Suite 225
>Palo Alto, California  94306

>/s/Christopher T. Giovinazzo
>Christopher T. Giovinazzo

152156

16

*B&O MANUFACTURING, INC. v. HOME DEPOT U.S.A., INC.*
USDC Case No. C07 02864-JSW

[REPLY BR. IN SUPPORT OF DEF.'S MOTION TO TRANSFER VENUE AND DISMISS COUNTS TWO THROUGH FIVE OF PL.'S SECOND AM. COMPLAINT]