IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B&O MANUFACTURING, INC., | |
| Plaintiff, | No. C 07-02864 JSW |
| v. | |
| HOME DEPOT U.S.A., INC., | **ORDER (1) DENYING DEFENDANT'S MOTION TO TRANSFER AND (2) GRANTING DEFENDANT'S MOTION TO DISMISS** |
| Defendant. | |

Now before the Court are the motions filed by defendant Home Depot U.S.A., Incorporated ("Home Depot") to transfer and to dismiss. The Court finds that these matters are appropriate for disposition without oral argument and they are hereby deemed submitted. *See* Civ. L.R. 7-1(b). Accordingly, the hearing set for November 2, 2007 is HEREBY VACATED. Having carefully reviewed the parties' papers and considered their arguments and relevant legal authority, the Court hereby denies Home Depot's motion to transfer and grants the motion to dismiss.[1]

**BACKGROUND**

In essence, this action is a contract dispute between plaintiff B&O Manufacturing, Incorporated ("B&O") and Home Depot. For approximately the last thirteen years, Home Depot has been B&O's largest customer. (Second Amended Complaint ("SAC"), ¶ 14.) B&O alleges that Home Depot and it executed a Memorandum of Understanding ("MOU"). (*Id*., ¶ 6,

---

[1] B&O's evidentiary objections are HEREBY OVERRULED.

1   Ex. 1.)  Pursuant to the MOU, Home Depot agreed to: (1) purchase orders for 72,000 units of

2   split curtain safety netting systems by May 15, 2005; (2) purchase all orange netting then owned

3   by B&O; and (3) advise B&O of the identity and location of suppliers of safety netting products

4   similar to B&O's products within California.  (*Id*., ¶¶ 6, 8, 10, Ex. 1.)  B&O alleges that Home

5   Depot breached these provisions of the MOU.

6          The MOU further provides that any litigation between the parties arising out of the

7   MOU shall be brought in the Northern District of California and be governed by California law.

8   (*Id*., Ex. 1.)

9          On January 31, 2006, B&O's president, Michael Calleja, was at Home Depot's facilities

10  in Atlanta, Georgia.  (*Id*., ¶ 15.)  B&O alleges that during this visit, Home Depot required Mr.

11  Calleja to immediately prepare and sign, with no opportunity to consult with counsel, a letter

12  agreement regarding a commitment by B&O to pay Home Depot money that it did not actually

13  owe to Home Depot.  (*Id*., ¶ 15, Ex. 2.)  Home Depot coerced B&O into signing the letter

14  agreement by threatening B&O that if it did not execute the agreement, Home Depot would

15  abruptly cease all future business dealings with B&O.  (*Id*., ¶ 17.)  Home Depot also promised,

16  if B&O signed the agreement, that B&O would continue to receive substantial quantities of

17  business from Home Depot in the future.  (*Id*.)

18         Although B&O did not have any direct discussions with Home Depot's legal

19  department, the Home Depot representatives who executed the letter agreement were acting as

20  agents of Home Depot's legal department.  (*Id*., 18.)  Home Depot and its legal department were

21  aware the B&O was represented by counsel with respect to the negotiation and execution of the

22  MOU.  (*Id*.)  B&O alleges that Home Depot's legal department's indirect contact with B&O

23  was a violation of the professional rules of conduct prohibiting direct or indirect communication

24  with a party known to be represented by an attorney without the consent of such attorney.  (*Id*.,

25  ¶ 19.)  According to B&O, because Home Depot's legal department violated this professional

26  rule of conduct, the contract is an illegal contract against public policy and is, therefore, void *ab*

27  *initio*.  (*Id*., ¶ 20.)

28

According to B&O, the letter agreement modified the MOU, and thus the forum selection and choice of provisions within the MOU apply to the letter agreement as well. (*Id.*, ¶ 15.)

B&O alleges that Home Depot's promise of substantial quantities of future business was a promise upon which Home Depot knew, or should have known, that B&O would be reasonably induced to rely. (*Id.*, ¶ 24.) B&O detrimentally relied on this promise in executing the letter agreement. (*Id.*, ¶ 25.) Home Depot failed to provide B&O with substantial quantities of future business. (*Id.*) The long term course of dealing between B&O and Home Depot established the pricing, term, description, timing of purchases, and quantity of the substantial amount of business to be provided by Home Depot. (*Id.*, ¶ 26.)

B&O also alleges that in June of 2006, the parties entered into a written contract, an Expense Buying Agreement, with an effective date of April 1, 2006. (*Id.*, ¶ 30, Ex. 3.) Section 3.1(b) of the Expense Buying Agreement provides: "Home Depot may terminate this Agreement without cause, upon sixty (60) days prior written notice to Contractor." (*Id.*, Ex. 3.). On July 25, 2007, Home Depot sent B&O a letter in which Home Depot purported to terminate the Expense Buying Agreement, without cause, upon sixty days of written notice, pursuant to Section 3.1(b). (*Id.*, ¶ 32.)

Attached to the Expense Buying Agreement is an Exhibit A-1, which provides that it is an addendum to and part of the agreement and that to the extent there is any conflict or discrepancy between the terms of the Expense Buying Agreement and Exhibit A-1, Exhibit A-1 controls. (*Id.*, ¶ 33, Ex. 3.) B&O alleges that Exhibit A-1 requires Home Depot to purchase seventy-five percent of new store safety netting within a specified time period and that Home Depot was prohibited from terminating the agreement without cause until the new store safety netting purchases amounted to seventy-five percent of purchases made by Home Depot within the specified date. (*Id.*, ¶ 34.) Exhibit A-1 provides, in pertinent part: "Volume commitment only applies to 75% of the new store safety netting within the dates specified above. ..." (*Id.*, Ex. 3.) B&O alleges that Home Depot breached the Expense Buying Agreement by terminating

3

it before Home Depot had purchased seventy-five percent of new store netting from B&O within the specified date. (*Id.*, ¶ 37.)

The Expense Buying Agreement provides that it is governed by Georgia law and that any lawsuits shall be filed in the Northern District of Geogia. (*Id.*, Ex. 3.) Although the Expense Buying Agreement requires mediation as a condition precedent to filing an action, B&O alleges that mediation is not required for actions in equity and/or that the mediation requirement has been waived by Home Depot. (*Id.*, ¶ 31, Ex. 3.)

Based on the above allegations, B&O asserts the following claims against Home Depot: (1) breach of the MOU; (2) rescission and restitution with respect to the letter agreement; (3) promissory estoppel; (4) declaratory relief regarding the purported termination of the Expense Buying Agreement; and (5) breach of the Expense Buying Agreement. Home Depot is now moving to transfer this action to the Northern District of Georgia and to dismiss all of B&O's claims except for the claim for breach of the MOU.

**ANALYSIS**

**A.    Home Depot's Motion to Transfer.**

**1.    Legal Standards Applicable to Motions to Transfer.**

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer a civil action to any district where the case could have been filed originally for the convenience of the parties and witnesses and in the interest of justice. A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination of whether transfer is appropriate in a particular case. For example, the court may consider: (1) the plaintiff's choice of forum; (2) the convenience of

witnesses and the parties; (3) the familiarity of the forum with the applicable law; (4) the ease of access to evidence; and (5) the relative court congestion and time of trial in each forum. *See, e.g., Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). The general rule is that the plaintiff's choice of forum is to be given substantial weight. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The burden is on the moving

party to demonstrate that the action should be transferred.  *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

### 2. Weighing of the Section 1404(a) Factors.

Home Depot argues this case should be transferred to Georgia because there is a Georgia forum selection clause in one of the contracts at issue, Georgia law governs some of the claims, and Home Depot's witnesses and evidence are located in Atlanta, Georgia.  However, it is undisputed that at least one of the three contracts at issue in this action contains a California forum selection clause and a California choice of law provision.  Moreover, B&O's witnesses and evidence are located in the Northern District of California.

Regarding the conflicting forum selection clauses, if the Court were to enforce both, the parties would be required to litigate the claims in this action in two different forums on opposite coasts.  Generally, courts will enforce a forum selection clause, unless enforcement of the cause would be "unreasonable under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).  Here, neither party suggests that the claims in this action should be divided and litigated in separate forums.  The Court finds that enforcing both forum selection clauses would be inefficient for both judicial and the parties' resources and "unreasonable under the circumstances." *Id*.  The Court further finds that the two conflicting forum selection clauses in the contracts at issue counteract one another, and thus, considered together do not weigh in favor of or against transfer.

Given the general rule that the plaintiff's choice of forum is to be given substantial weight, and Defendants' failure to demonstrate that the convenience of witnesses and the parties or the ease of access to evidence tips in favor of transferring this case to Geogia, the Court concludes that Home Depot has not met its burden to show that this case should be transferred.  Accordingly, the Court DENIES Home Depot's motion to transfer.

**B. Home Depot's Motion to Dismiss.**

### 1. Legal Standards Applicable to Motions to Dismiss.

5

A motion to dismiss is proper under Federal Rule of Civil Procedure Rule 12(b)(6) ("Rule 12(b)(6)") where the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss are viewed with disfavor and are rarely granted. *Hall v. City of Santa Barbara*, 833 F.2d 1270 (9th Cir. 1986). "A complaint may be dismissed for one of two reasons: (1) lack of a cognizable theory or (2) insufficient facts under a cognizable legal claim." *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).

**2.     B&O's Fails to State a Claim for Rescission and Restitution.**

B&O alleges that it was coerced into signing the letter agreement to refund money to Home Depot. According to B&O, Home Depot coerced B&O into signing the letter agreement by threatening B&O that if it did not execute the agreement, Home Depot would abruptly cease all future business dealings with B&O. (SAC, ¶ 17.) Home Depot also promised, if B&O signed the agreement, that B&O would continue to receive substantial quantities of business from Home Depot in the future. (*Id.*) Moreover, B&O alleges that the Home Depot's legal department's indirect contact with B&O during the contract negotiations was a violation of the professional rules of conduct prohibiting direct or indirect communication with a party known to be represented by an attorney without the consent of such attorney. (*Id.*, ¶ 19.) According to B&O, because Home Depot's legal department violated this professional rule of conduct, the contract is an illegal contract against public policy and is, therefore, void *ab initio*. (*Id.*, ¶ 20.)

Home Depot argues that this claim should be dismissed because B&O has not alleged a facts which would support a claim for rescission. Under California law, a contract is illegal if it is: "(1) contrary to an express provision of law, (2) contrary to the policy of express law, although not expressly prohibited, or (3) otherwise contrary to good morals." *Vick v. S.H.Patterson*, 158 Cal. App. 2d 414, 417 (1958). Georgia law is in accord. *See Brown v. Five Points Parking Center*, 121 Ga. App. 819, 821 (1970). Here, B&O does not contend that an express provision of law or even a policy of an express law has been violated. *See Vick*, 158

6

1  Cal. App. 2d at 418 (finding that violation of fire department rule did not invalidate a contract
2  because it was not a statute). Therefore, B&O's alleged violation of the professional rules of
3  conduct is insufficient to void the contract at issue based on illegality.

4  Moreover, under Georgia law, although "the Code of Professional Responsibility
5  provides specific sanctions for the professional misconduct of the attorneys whom it regulates,
6  it does not establish civil liability of attorneys for their professional misconduct, nor does it
7  create remedies in consequence thereof." *Davis v. Findley*, 262 Ga. 612, 613, 422 S.E.2d 859,
8  861 (1992). Under neither California nor Georgia law has B&O cited, or the Court found, any
9  authority for its proposition that a violation of the professional rules of conduct provides a basis
10 to rescind a contract.[2] *Cf. William N. Robbins, P.C. v. Burns*, 227 Ga. App. 262, 264-65, 488
11 S.E.2d 760, 762 (1997) (although not reaching argument regarding whether a fee splitting
12 agreement violated professional rules of conduct, noting that any complaint that such rules were
13 violated would be appropriately addressed to the State Bar). Without such authority, the Court
14 finds that the alleged violation of the professional rules of conduct does not provide a basis to
15 rescind the contract at issue.

16 Nor has B&O alleged facts which, if true, are sufficient to establish that the letter
17 agreement was signed under duress. Under California law, "[t]o set aside a contract because of
18 economic duress, a court must determine (1) that a coercive act took place; and (2) that the act
19 left the party pleading duress with no 'reasonable alternative' to the agreement." *Aluka v. 7-*
20 *Eleven, Inc.*, 2006 WL 224398, *6 (E.D. Cal. Jan. 27, 2006). As to the first prong, "[t]he
21 assertion of a claim known to be false or a bad faith threat to breach a contract or to withhold a
22 payment may constitute a wrongful act for purposes of the economic duress doctrine." *Rich &*
23 *Whillock, Inc. v. Ashton Devel., Inc.*, 157 Cal. App. 3d 1154, 1159 (1984). With respect to the
24 second prong, "a reasonably prudent person subject to such an act may have no reasonable
25 alternative but to succumb when the only alternative is bankruptcy or financial ruin." *Id.* B&O

---

[2] B&O's reliance on *Mirabito v. Liccardo*, 4 Cal. App. 4th 41 (1992) is misplaced. In *Mirabito*, the court held that the rules of professional conduct establish what an attorney's duties are to his client and, thus, were relevant to a claim for breach of fiduciary duty raised by a client against his attorney. *Id.* at 45. Here, B&O is not suing its own attorney and is not bring a claim for breach of fiduciary duty. Therefore, *Mirabito* is inapplicable.

7

has not alleged facts to establish either prong. Although B&O argued in opposition to the motion to dismiss that Home Depot made a bad faith threat to breach a contract, B&O merely alleges that Home Depot would cease "future business dealings with B&O." (*Compare* Opp at 7-8 *with* SAC, ¶ 17.) Moreover, B&O does not allege that if it did not agree to the letter agreement under the terms presented by Home Depot that it would have suffered financial ruin. Instead, B&O merely alleges that over the past thirteen years, Home Depot has been its largest customer and that continued purchases from Home Depot was critical to B&O's financial success. (SAC, ¶ 14.)

Such allegations are also insufficient to state a claim for economic duress under Georgia law. Similar to California law, under Georgia law, merely suffering from financial difficulties does not amount to duress. *Miller v. Calhoun/Johnson Co.*, 239 Ga. App. 648, 650 (1998). Instead, the alleged conduct must be sufficient to show that the party claiming duress was deprived of its free will. *Id.* Moreover, the alleged conduct by Home Depot "must be wrongful to constitute duress, and it is not duress to threaten to do what one has a legal right to do." *See Transamerica Consumer Receivable Funding, Inc. v. Warhawk Inv., Inc.*, 842 F. Supp. 536, 541 (M.D. Ga. 1994). Here, B&O has not alleged facts which, if true, would show that it was deprived of its free will or that Home Depot threatened to do something it did not have the legal right to do. Accordingly, the Court grants Home Depot's motion as to B&O's claim for rescission and restitution without prejudice. The Court will provide B&O an opportunity to amend this claim.

### 3. B&O Fails to State a Claim for Promissory Estoppel.

In its claim for promissory estoppel, B&O alleges that Home Depot promised "substantial quantities of business in the future" to B&O if it signed the letter agreement. (SAC, ¶ 24.) Home Depot moves to dismiss this claim on several grounds, including that the alleged promise is too vague and indefinite to be enforceable.

Under California law, the required elements to state a claim for promissory estoppel are: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party

8

asserting the estoppel must be injured by his reliance." *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 890 (1976). Therefore, "a promise that is vague, general or of indeterminate application is not enforceable." *Aguilar v. Int'l Longshoremen's Union Local # 10*, 966 F.2d 443, 446 (9th Cir.1992) (internal quotes and citation omitted). Moreover, "a promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Glen Holly Entertainment, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1017 (9th Cir. 2003) (quoting *Ladas v. Cal. State Auto. Ass'n,* 19 Cal. App. 4th 761 (1993)). Georgia law is in accord. *See Mariner Healthcare, Inc. v. Foster*, 280 Ga. App. 406, 412 (2006) ("Promissory estoppel does not apply to a promise that is vague, indefinite, or of uncertain duration.").

Here, B&O merely alleges that Home Depot promised to provide substantial quantities of future business. As Home Depot argues, the alleged promise fails to specify which products Home Depot would purchase, when in the future Home Depot would make such purchases, what price Home Depot would pay, or what quantities would qualify as "substantial." (Mot. at 12.) In response, B&O argues that a contract may be formed even if one or more of the essential terms are left open and that, as alleged in its complaint, the long term course of dealing between the parties "established the pricing, term, description, timing of purchases, and quantity of the substantial quantities of business to be provided by Home Depot." (SAC, ¶ 26; Opp. at 11, 13.) However, the authority B&O cites in support of the proposition that a contract may be formed, even if one or more of the essential terms are left open, is inapplicable. Plaintiff's claim regarding the alleged promise to provide substantial future business is for promissory estoppel, not breach of contract. Under a claim for promissory estoppel, "a promise that is vague, general or of indeterminate application is not enforceable." *See Aguilar*, 966 F.2d at 446; *see also Mariner Healthcare*, 280 Ga. App. at 412 ("Promissory estoppel does not apply to a promise that is vague, indefinite, or of uncertain duration."). B&O's allegation, and argument in reliance on such allegation, that the essential terms may be determined by examining the long term course of dealing between the parties further confirms that the alleged promise itself is insufficient to define the essential terms, such as price, contract duration, description of

1   products, timing of purchases, and quantity of products. *See Lange v. TIG Ins. Co.*, 68 Cal.
2   App. 4th 1179, 1185 (1999) (noting that extrinsic evidence is relevant in interpreting a written
3   contract only if the language is ambiguous and finding that "if extrinsic evidence is needed to
4   interpret a promise, then obviously the promise is not clear and unambiguous."). Accordingly,
5   the Court grants Home Depot's motion to dismiss as to B&O's claim for promissory estoppel.
6       The Court is not providing B&O leave to amend this claim. Upon review of B&O's
7   SAC and opposition brief, it is clear that B&O could not state a claim for promissory estoppel.
8   If the Court were to provide B&O leave to amend, such leave would be limited to pleading facts
9   that are consistent with its complaint. B&O has already alleged that the essential terms were
10  not included in the promise, but rather, that the missing essential terms, such as price, contract
11  duration, description of products, timing of purchases, and quantity of products were established
12  by the course of dealing between the parties. Accordingly, providing leave to amend would be
13  futile. *See DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (leave to
14  amend is properly denied where amendment would be futile).

### 4. The Court Declines to Hear B&O's Claim for Declaratory Relief.

16  Home Depot moves to dismiss B&O's claim for declaratory relief on the grounds that
17  resolving this claim will not aid in clarifying or settling legal relations between the parties.
18  (Mot. at 13.) By statute, the Court "may," but is not required to, "declare the rights and other
19  legal relations of any interested party seeking such declaration, whether or not further relief is
20  or could be sought." *See* 28 U.S.C. § 2201(a); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277,
21  282 (1995) (noting courts' discretion to entertain claim for declaratory judgment). "Declaratory
22  relief should be denied when it will neither serve a useful purpose in clarifying and settling the
23  legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and
24  controversy faced by the parties." *United States v. State of Washington*, 759 F.2d 1353, 1357
25  (9th Cir. 1985).
26      In its claim for declaratory relief, B&O alleges that on July 25, 2007, Home Depot sent a
27  letter to B&O purporting to terminate the Expense Buying Agreement, without cause, upon
28  sixty days written notice. (SAC, ¶ 32.) According to B&O, Home Depot was not entitled to

10

terminate the agreement without cause because it had not yet purchased seventy-five percent of the new store safety netting as required by Exhibit A-1, which is attached and incorporated into the Expense Buying Agreement. (*Id.*, ¶ 33, Ex. 3.) B&O also brings a claim for breach of contract against Home Depot, alleging that Home Depot breached the Expense Buying Agreement by failing to purchase seventy-five percent of the new store safety netting. In essence, B&O is contesting the same conduct in both of these claims – Home Depot's purported termination before purchasing the alleged required amount of new store safety netting.[3] The Court finds that B&O's claims for declaratory relief and breach of contract are essentially duplicative, and thus, hearing the declaratory relief claim would not "serve a useful purpose in clarifying and settling the legal relations in issue." *See Washington*, 759 F.2d at 1357; *see also Strawflower Electronics, Inc. v. Radioshack Corp.*, 2005 WL 2290314, *11 (N.D. Cal. Sept. 20, 2005) (dismissing declaratory relief claim because it was duplicative of plaintiff's breach of contract claim). According, the Court exercises its discretion to dismiss B&O's claim for declaratory relief.

**5. B&O's Failure to Mediate is Fatal to its Claim for Breach of Contract.**

Home Depot moves to dismiss B&O's claim for breach of the Expense Buying Agreement based on B&O's failure to mediate prior to filing suit. A claim that is filed before a mediation requirement, that is a condition precedent to the parties' right to sue as set forth in an agreement, is satisfied shall be dismissed. *Gould v. Gould*, 240 Ga. App. 481, 482 (1999) (dismissing petition filed before mediation provision in settlement agreement had been complied with). The Expense Buying Agreement provides that mediation is a condition precedent to initiating any action regarding a dispute arising under or in connection with the agreement. (SAC, Ex. 3.) B&O does not dispute that the Expense Buying Agreement requires mediation as a condition precedent to filing a claim arising under or in connection with the

---

[3] B&O also alleges that as a consequence of termination prior to purchasing seventy-five percent of the new store safety netting, B&O is entitled to a retroactive modification of the discounted pricing it provided to Home Depot. Such an allegation is a remedy that may be sought through the breach of contract claim regarding the Expense Buying Agreement.

11

agreement, or that B&O has not yet mediated this dispute. Rather, B&O contends that Home Depot has waived this requirement by initially arguing that mediation was premature.

Home Depot concedes that it did initially contend that mediation regarding the parties' dispute was premature, but that such contention was consistent with the Expense Buying Agreement. The agreement provides a sixty-day notice period for termination without cause, during which the parties are to unwind their affairs related to the agreement. (SAC, Ex. 3.) Moreover, the Expense Buying Agreement provides that no term or condition set forth in the agreement may be waived unless the waiver is in writing and signed by an authorized agent. (*Id.*)

Home Depot took the position that mediation was premature before the notice period had expired and the termination procedures had been completed. However, the notice period expired on September 23, 3007. Home Depot no longer resists mediation, and in fact proffers that mediation could be "tremendously useful." (Declaration of Christopher T. Giovinazzo, Ex. D.) Accordingly, the Court dismisses B&O's claim for breach of the Expense Buying Agreement. This ruling is without prejudice to B&O bringing a claim for breach of the Expense Buying Agreement after the mediation requirement has been satisfied.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Home Depot's motion to dismiss. If B&O elects amend its claim for rescission and restitution based on duress, B&O shall file an amended complaint by no later than November 30, 2007. Home Depot shall answer or move to dismiss any amended complaint by no later than December 21, 2007. The Case Management Conference scheduled for November 2, 2007 at 9:00 a.m. is HEREBY CONTINUED to November 2, 2007 at 1:30 p.m.

**IT IS SO ORDERED.**

Dated: November 1, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

12