1    SEDGWICK, DETERT, MORAN & ARNOLD LLP
     STEVEN ROLAND  (Bar No. 108097)
2    AMBER RYE BRUMFIEL  (Bar No. 215181)
     One Market Plaza
3    Steuart Tower, 8th Floor
     San Francisco, California 94105
4    Telephone: (415) 781-7900
     Facsimile: (415) 781-2635
5

6    BONDURANT, MIXSON & ELMORE, LLP
     RONAN P. DOHERTY (*Pro Hac Vice*)
7    CHRISTOPHER T. GIOVINAZZO (*Pro Hac Vice*)
     3900 One Atlantic Center
8    1201 West Peachtree Street NW, Suite 3900
     Atlanta, Georgia  30309
9    Telephone: (404) 881-4100
     Facsimile: (404) 881-4111

10

11    Attorneys for Defendant
     HOME DEPOT U.S.A., INC.

12

13              UNITED STATES DISTRICT COURT
14           NORTHERN DISTRICT OF CALIFORNIA
              SAN FRANCISCO DIVISION
15

16

17    B&O MANUFACTURING, INC.,        CASE NO. C07 02864 JSW

18         Plaintiff,                **DECLARATION OF CHRISTOPHER T.**
                                       **GIOVINAZZO**
19          v.

20    HOME DEPOT U.S.A., INC.,

21         Defendant.

22

23       Pursuant to 28 U.S.C. § 1746, I, Christopher T. Giovinazzo, hereby declare as follows:

24                                   1.

25       This Declaration is based on my own personal knowledge.  I am an attorney in good

26 standing licensed in the State of Georgia.  I am over the age of 18 years and am competent to

27

28    152016                              1

BONDURANT, MIXSON
& ELMORE, LLP
3900 ONE ATLANTIC CENTER
1201 W. PEACHTREE ST., NW
ATLANTA, GA 30309
TELEPHONE (404) 881-4100

             **DECLARATION OF CHRISTOPHER T. GIOVINAZZO**

1    testify regarding the following matters.

2                    2.

3        I am an associate at the law firm of Bondurant, Mixson & Elmore, LLP representing

4 Defendant Home Depot U.S.A., Inc., in this matter.  I have been admitted to this Court *pro hac*

5 *vice*.

6                    3.

7        A true and correct copy of the April 2005 Memorandum of Understanding by and between

8 Home Depot U.S.A., Inc. and B&O Manufacturing, Inc., with Exhibits A, B and C, is attached

9 hereto Exhibit 1.  Consistent with the parties' practice in this action, the pricing information in

10 Exhibit A to the agreement has been redacted from this copy of the Memorandum of

11 Understanding.

12        This 11th day of April, 2008.

13

14                                   Christopher T. Giovinazzo

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BONDURANT, MIXSON
& ELMORE, LLP
3900 ONE ATLANTIC CENTER
1201 W. PEACHTREE ST., NW
ATLANTA, GA 30309
TELEPHONE (404) 881-4100

152016

2

**DECLARATION OF CHRISTOPHER T. GIOVINAZZO**

1  **CERTIFICATE OF SERVICE**

2      I hereby certify that on April 11, 2008 I have electronically filed the within and foregoing

3  **DECLARATION OF CHRISTOPHER T. GIOVINAZZO** with the Clerk of Court using the

4  CM/ECF system which will automatically send email notification of such filing to the following

5  attorney of record, and by U.S. mail, postage prepaid thereon, addressed as follows:

6      Paul E. Rice
       Rice & Bronitsky

7      350 Cambridge Ave., Suite 225
       Palo Alto, California 943006

8

9                              /s/Ronan P. Doherty
                              Ronan P. Doherty

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  152016                              3

BONDURANT, MIXSON
& ELMORE, LLP
3900 ONE ATLANTIC CENTER
1201 W. PEACHTREE ST. NW
ATLANTA, GA 30309
TELEPHONE (404) 881-4100

**DECLARATION OF CHRISTOPHER T. GIOVINAZZO**

# EXHIBIT 1



# ORIGINAL

## MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding is intended to clarify the mutual understanding between **Home Depot U.S.A., Inc.** ("Home Depot") and **B&O Manufacturing, Inc.** ("B&O") with regards to their continuing business relationship.

Both parties agree that:

1. Home Depot Commitments

   a. Home Depot agrees to issue purchase orders for 72,000 units of the split curtain safety netting systems described in Exhibit A, at the prices referenced in said Exhibit A, plus sales tax and freight charges ("Products") by no later than May 15, 2005, provided B&O confirms that it is able to deliver such products in substantial compliance with the Schedule set forth in Exhibit A. Prior to delivery of the first 12,000 units, Home Depot shall make prepayment in full for said units. Payment for all other units shall be made pursuant to the terms of the then applicable Expense Buying Agreement, but not to exceed thirty days from each shipment by B &O.

   b. During calendar year 2005 and through March 31, 2006, Home Depot agrees that B&O will receive orders representing no less than fifty percent (50%) of Home Depot's requirements for safety netting systems, in new and remodeled stores, at the prices referenced in said Exhibit A, plus sales tax and freight charges. Payment shall be made pursuant to the terms of the then applicable Expense Buying Agreement, but not to exceed thirty days from each shipment by B &O.

   c. Home Depot will promptly identify in writing to B&O those suppliers from which it purchases safety netting products similar to the Products for use in its stores, when it first becomes aware of the identity of any such supplier. Additionally, whenever Home Depot becomes aware of the installation of safety netting products similar to the Products in any Home Depot store located in the State of California, Home Depot shall use commercially reasonable efforts notify B&O in writing of the location of each such store. Notwithstanding the previous sentence, B&O acknowledges that third parties install safety netting on behalf of Home Depot, and Home Depot may not be aware of the locations where third party safety netting may be installed.

   d. Home Depot agrees and acknowledges that it has no intellectual property ownership or rights in the Products referenced in Exhibit A, or in any patents on said Products, and shall, upon the request of B&O promptly execute such documents as are reasonably request by B&O to confirm such, and further to quitclaim, assign and transfer any rights it might have therein, if any, to B&O, and or Michael J. Calleja, as directed by B&O.

   e.  Home Depot shall purchase all orange netting currently owned by B&O at the price referenced in Exhibit A. Home Depot may direct B&O to utilize said netting in the manufacture of the safety netting systems referenced in 1.a. and 1.b. above.

## 2.  B&O Commitments

   a.  B&O shall supply Home Depot the Products on a non-exclusive basis.

   b.  The Products will meet or exceed industry standards for quality and will be shipped on time in compliance with the mutually agreed upon shipping schedule indicated on each Home Depot purchase order.

   c.  B&O will execute the Release attached to this memorandum as <u>Exhibit B</u> and the Expense Buying Agreement attached as <u>Exhibit C</u>.

3.  <u>Controlling Documents</u>. In the event of a conflict between the terms of this Memorandum and the terms of the Expense Buying Agreement, the terms of this Memorandum will control in all respects. This Memorandum and the attached Exhibits constitute the entire agreement between the parties with respect to the subject matter herein, except that nothing contained in the Expense Buying Agreement or otherwise, shall either preclude B&O or Michael J. Calleja from bringing suit against any party other than the Home Depot for patent infringement or other violation of the intellectual property or other rights of B&O and/or Michael J. Calleja. No amendment shall be valid unless in writing and signed by a duly authorized representative of each party.

4.  Venue and Controlling Law. In the event of any litigation between the parties arising out of this Memorandum, the Parties agree that any litigation shall be brought in the United States District Court for the Northern District of California, and nowhere else. The Parties further agree that this contract is entered into in the State of California, and that the laws of the State of California, except those laws governing conflicts of laws, shall govern.

If you are in agreement with the foregoing, please so indicate by executing a copy of this memorandum and returning one signed copy to the attention of Scott Long, Manager - Procurement. The terms of this memorandum shall become effective when fully executed by the parties.

Home Depot U.S.A., Inc.                          B&O Manufacturing, Inc.

Scott Long                                       Name: _____
COE Leader                                       Title: _____
Date: _____                            Date: _____

2

# EXHIBIT A
## DESCRIPTION AND IMAGE OF SAFETY NETTING PRODUCT

TSC

**BandO NET Price List**

| | |
|---|---|
| NET-P-01032 | ASSEMBLY Net, Split Curtian, Insert Mount,W/key,32"bay |
| NET-P-01036 | ASSEMBLY Net, Split Curtian, Insert Mount.W/key,36"bay |
| NET-P-01048 | ASSEMBLY Net, Split Curtian, Insert Mount.W/key,48"bay |
| NET-P-01051 | ASSEMBLY Net, Split Curtian, Insert Mount.W/key,51"bay |
| NET-P-01061 | ASSEMBLY Net, Split Curtian, Insert Mount.W/key / 61"bay |
| NET-P-01072 | ASSEMBLY Net, Split Curtian, Insert Mount.W/key,72"bay |
| NET-P-01075 | ASSEMBLY Net, Split Curtian, Insert Mount.W/key,75"bay |
| NET-P-01084 | ASSEMBLY Net, Split Curtian, Insert Mount.W/key,84"bay |
| NET-P-01086 | ASSEMBLY Net, Split Curtian, Insert Mount.W/key,86"bay |
| NET-P-01087 | ASSEMBLY Net, Split Curtian, Insert Mount.W/key,87"bay |
| NET-P-01093 | ASSEMBLY Net, Split Curtian, Insert Mount.W/key,93"bay |
| NET-P-01096 | ASSEMBLY Net, Split Curtian, Insert Mount.W/key,96"bay |
| NET-P-01099 | ASSEMBLY Net, Split Curtian, Insert Mount.W/key,99"bay |
| NET-P-01102 | ASSEMBLY Net, Split Curtian, Insert Mount.W/key,102"bay |
| NET-P-01108 | ASSEMBLY Net, Split Curtian, Insert Mount.W/key,108"bay |
| NET-P-01120 | ASSEMBLY Net, Split Curtian, Insert Mount.W/key,120"bay |
| NET-P-01121 | ASSEMBLY Net, Split Curtian, Insert Mount.W/key,121"bay |
| NET-P-01126 | ASSEMBLY Net, Split Curtian, Insert Mount.W/key,126"bay |
| NET-P-01144 | ASSEMBLY Net, Split Curtian, Insert Mount.W/key,144"bay |
| NET-P-01156 | ASSEMBLY Net, Split Curtian, Insert Mount.W/key,156"bay |
| NET-P-02048 | POST, Add-on, Insert Mount,W/Brackets and Hardware 48" for 51 1/2" |
| NET-P-02105 | KEY Only Insert Column, Zinc |
| NET-P-02106 | INSERT. Assamby, 2 pcs |
| NET-P-02107 | PLATE, insert, (2 Pcs) Key mount/ 2 hook holes |
| NET-P-02109 | KEY KIT, Key, 2 key Support Brackets and fastners |
| NET-P-02125 | U-BRACKET,Net, Split Curtian, Front Mount Column Support, Zinc |
| NET-P-02128 | BRACKET, Bridge, for Sleeved Insert |
| NET-P-05048 | ASSEMBLY Net, Split Curtian, Front Mount,48"bay |
| NET-P-05051 | ASSEMBLY Net, Split Curtian, Front Mount,51" bay |
| NET-P-05054 | ASSEMBLY Net, Split Curtian, Front Mount, 54"bay |
| NET-P-05060 | ASSEMBLY Net, Split Curtian, Front Mount, 60" bay |
| NET-P-05072 | ASSEMBLY Net, Split Curtian, Front Mount,72" bay, |
| NET-P-05075 | ASSEMBLY Net, Split Curtian, Front Mount, 75" bay |
| NET-P-05080 | POST, Add-on, Net, Split Curtian, W/Brackets and Hardware, 80" |
| NET-P-05084 | ASSEMBLY Net, Split Curtian, Front Mount, 84" bay |
| NET-P-05087 | ASSEMBLY Net, Split Curtian, Front Mount, 87" bay |
| NET-P-05093 | ASSEMBLY Net, Split Curtian, Front Mount, 93" bay |
| NET-P-05096 | ASSEMBLY Net, Split Curtian, Front Mount,96" bay |
| NET-P-05099 | ASSEMBLY Net, Split Curtian, Front Mount, 99" bay |
| NET-P-05102 | ASSEMBLY Net, Split Curtian, Front Mount,102"bay |
| NET-P-05108 | ASSEMBLY Net, Split Curtian, Front Mount,108"bay |
| NET-P-05120 | ASSEMBLY Net, Split Curtian, Front Mount,120"bay |
| NET-P-05121 | ASSEMBLY Net, Split Curtian, Front Mount,121"bay |
| NET-P-05126 | ASSEMBLY Net, Split Curtian, Front Mount,126"bay |
| NET-P-05144 | ASSEMBLY Net, Split Curtian, Front Mount,144"bay |
| NET-P-05150 | ASSEMBLY Net, Split Curtian, Front Mount,150"bay |
| NET-P-05152 | ASSEMBLY Net, Split Curtian, Front Mount,152"bay |
| NET-P-05156 | ASSEMBLY Net, Split Curtian, Front Mount,156"bay |
| NET-P-06002 | BRACKET, Intermediate, Reversable, for top & bottom |
| NET-P-06003 | BRACKET, Beam bridge |
| NET-P-06004 | BRACKET, Beam, Falt, Continuous Cable Stabilzer |
| NET-P-06048 | ASSEMBLY Net, Split Curtian, Intermediate, 5Pc, 48"bay |
| NET-P-06051 | ASSEMBLY Net, Split Curtian, Intermediate, 5Pc,51"bay |
| NET-P-06072 | ASSEMBLY Net, Split Curtian, Intermediate, 5Pc,72"bay |

**REDACTED**

3/29/2005                                    1                                    Mjc 11/15/04

### BandO NET Price List

| | |
|---|---|
| NET-P-06075 | ASSEMBLY Net, Split Curtian, Intermediate, 5Pc,75"bay |
| NET-P-06084 | ASSEMBLY Net, Split Curtian, Intermediate, 5Pc, 84"bay |
| NET-P-06087 | ASSEMBLY Net, Split Curtian, Intermediate, 5Pc,87"bay |
| NET-P-06093 | ASSEMBLY Net, Split Curtian, Intermediate, 5Pc,83"bay |
| NET-P-06096 | ASSEMBLY Net, Split Curtian, Intermediate, 5Pc, 96"bay |
| NET-P-06099 | ASSEMBLY Net, Split Curtian, Intermediate, 5Pc,99"bay |
| NET-P-06102 | ASSEMBLY Net, Split Curtian, Intermediate, 5Pc,102"bay |
| NET-P-06108 | ASSEMBLY Net, Split Curtian, Intermediate, 5Pc,108"bay |
| NET-P-06120 | ASSEMBLY Net, Split Curtian, Intermediate, 5Pc,120"bay |
| NET-P-06121 | ASSEMBLY Net, Split Curtian, Intermediate, 5Pc,121"bay |
| NET-P-06144 | ASSEMBLY Net, Split Curtian, Intermediate, 5Pc,144"bay |
| NET-P-06156 | ASSEMBLY Net, Split Curtian, Intermediate, 5Pc,156"bay |
| NET-L-07003 | BRACKET, Restrainer, Laser, two hole |
| NET-L-07048 | RESTRAINER Cable 48",45" Cable,1 brk1 2 s'hook |
| NET-L-07051 | RESTRAINER Cable 51", 48" Cable,1 brk1 2 s'hook |
| NET-L-07075 | RESTRAINER Cable75", 72" Cable,1 brk1 2 s'hook |
| NET-L-07078 | RESTRAINER Cable 78", 75" Cable,1 brk1 2 s'hook |
| NET-L-07084 | RESTRAINER Cable 84", 81" Cable,1 brk1 2 s'hook |
| NET-L-07087 | RESTRAINER Cable 87", 84" Cable,1 brk1 2 s'hook |
| NET-L-07090 | RESTRAINER Cable 90", 87" Cable,1 brk1 2 s'hook |
| NET-L-07093 | RESTRAINER Cable 93", 90" Cable,1 brk1 2 s'hook |
| NET-L-07096 | RESTRAINER Cable 96", 93" Cable,1 brk1 2 s'hook |
| NET-L-07098 | RESTRAINER Cable 98", 95" Cable,1 brk1 2 s'hook |
| NET-L-07099 | RESTRAINER Cable 99", 96" Cable,1 brk1 2 s'hook |
| NET-L-07100 | RESTRAINER Cable 100", 97" Cable,1 brk1 2 s'hook |
| NET-L-07102 | RESTRAINER Cable 102", 99" Cable,1 brk1 2 s'hook |
| NET-L-07108 | RESTRAINER Cable 108",105" Cable,1 brk1 2 s'hook |
| NET-L-07112 | RESTRAINER Cable 112",109" Cable,1 brk1 2 s'hook |
| NET-L-07114 | RESTRAINER Cable114",111" Cable,1 brk1 2 s'hook |
| NET-L-07126 | RESTRAINER Cable 126",123" Cable,1 brk1 2 s'hook |
| NET-L-07132 | RESTRAINER Cable 132",129" Cable,1 brk1 2 s'hook |
| NET-L-07138 | RESTRAINER Cable 138",135" Cable,1 brk1 2 s'hook |
| NET-L-07144 | RESTRAINER Cable 144",141" Cable,1 brk1 2 s'hook |
| NET-L-07156 | RESTRAINER Cable 156",153" Cable,1 brk1 2 s'hook |
| NET-P-08100024 | END CAP Net System 24", no Post |
| NET-P-08100036 | END CAP Net System 36", no Post |
| NET-P-08100042 | END CAP Net System 42", no Post |
| NET-P-08100048 | END CAP Net System 48", no Post |
| NET-P-08100090 | END CAP Net System,42/6/42= 90", no Post |
| NET-P-08100096 | END CAP Net System,42/6/48= 96", no Post |
| NET-P-08100102 | END CAP Net System 48/6/48=102", no Post |
| NET-P-09051 | ASSEMBLY Net, Split Curtian, VRack Insert Mount, 51" bay |
| NET-P-09075 | ASSEMBLY Net, Split Curtian, VRack Insert Mount,75" bay |
| NET-P-09087 | ASSEMBLY Net, Split Curtian, VRack Insert Mount,87" bay |
| NET-P-09099 | ASSEMBLY Net, Split Curtian, VRack Insert Mount,99" bay |
| NET-P-09156 | ASSEMBLY Net, Split Curtian, VRack Insert Mount,156" bay |
| NET-P-09948 | POST Add-on, VRack, Insert Mount, 48" |
| NET-P-11048 | NET, Split Curtian,18/20 (1 Pc) 48" w/strap |
| NET-P-11051 | NET, Split Curtian,18/20 (1Pc) 51" |
| NET-P-11054 | NET, Split Curtian,18/12 (2 Pc) 54" w/strap |
| NET-P-11060 | NET, Split Curtian,18/12 (2 Pc) 60" |
| NET-P-11072 | NET, Split Curtian,18/16 (2 Pc) 72" w/strap |
| NET-P-11075 | NET, Split Curtian,18/16 (2 Pc) 75" |

**REDACTED**

Mjc 11/15/04



# BandO NET Price List

| | |
|---|---|
| NET-P-11084 | NET, Split Curtian,18/18 (2 Pc) 84"  w/strap |
| NET-P-11087 | NET, Split Curtian,18/18 (2 Pc) 87" |
| NET-P-11096 | NET, Split Curtian,18/20 (2 Pc) 96"  w/strap |
| NET-P-11099 | NET, Split Curtian,18/20 (2 Pc) 99" |
| NET-P-11102 | NET, Split Curtian,18/21 (2 Pc) 102"  w/strap |
| NET-P-11108 | NET, Split Curtian,18/21 (2 Pc) 108" |
| NET-P-11120 | NET, Split Curtian,18/23 (2 Pc) 120"  w/strap |
| NET-P-11121 | NET, Split Curtian,18/23 (2 Pc) 121"  w/strap |
| NET-P-11126 | NET, Split Curtian,18/25 (2 Pc) 126" |
| NET-P-11144 | NET, Split Curtian,18/29 (2 Pc) 144"  w/strap |
| NET-P-11150 | NET, Split Curtian,18/29 (2 Pc) 150" |
| NET-P-11156 | NET, Split Curtian,18/32 (2 Pc) 156"  w/strap |
| NET-P-12936 | ENDCAP, Insert Post,Net, w/Adj. straps, for 36" Opening |
| NET-P-12942 | ENDCAP, Insert Post,Net, w/Adj. straps, for  42" Opening |
| NET-P-12948 | ENDCAP, Insert Post,Net, w/Adj. straps, for 48" Opening |
| NET-P-165048 | INTERMEDIATE,with Adj. DrawBar 5Pc,48"bay |
| NET-P-165051 | INTERMEDIATE,with Adj. DrawBar  5Pc,51"bay |
| NET-P-165072 | INTERMEDIATE,with Adj. DrawBar  5Pc,72"bay |
| NET-P-165075 | INTERMEDIATE,with Adj. DrawBar  5Pc, 75"bay |
| NET-P-165084 | INTERMEDIATE,with Adj. DrawBar  5Pc,84"bay |
| NET-P-165087 | INTERMEDIATE,with Adj. DrawBar  5Pc,87"bay |
| NET-P-165093 | INTERMEDIATE,with Adj. DrawBar  5Pc,93"bay |
| NET-P-165096 | INTERMEDIATE,with Adj. DrawBar  5Pc,96"bay |
| NET-P-165099 | INTERMEDIATE,with Adj. DrawBar  5Pc, 99"bay |
| NET-P-165102 | INTERMEDIATE,with Adj. DrawBar  5Pc,102"bay |
| NET-P-165108 | INTERMEDIATE,with Adj. DrawBar  5Pc,108"bay |
| NET-P-165120 | INTERMEDIATE,with Adj. DrawBar  5Pc,120"bay |
| NET-P-165121 | INTERMEDIATE,with Adj. DrawBar  5Pc,121"bay |
| NET-P-165144 | INTERMEDIATE,with Adj. DrawBar  5Pc,144"bay |
| NET-P-165156 | INTERMEDIATE,with Adj. DrawBar  5Pc,156"bay |
| NET-P-50033 | CABLE set of 2, Top Stock Net 33" |
| NET-P-50045 | CABLE set of 2, Top Stock Net 45" |
| NET-P-50048 | CABLE set of 2, Top Stock Net 48" |
| NET-P-50051 | CABLE set of 2, Top Stock Net 51" |
| NET-P-50054 | CABLE set of 2, Top Stock Net 54" |
| NET-P-50060 | CABLE set of 2, Top Stock Net 60" |
| NET-P-50062 | CABLE set of 2, Top Stock Net 62" |
| NET-P-50069 | CABLE set of 2, Top Stock Net 69" |
| NET-P-50072 | CABLE set of 2, Top Stock Net 72" |
| NET-P-50075 | CABLE set of 2, Top Stock Net 75" |
| NET-P-50078 | CABLE set of 2, Top Stock Net 78" |
| NET-P-50081 | CABLE set of 2, Top Stock Net 81" |
| NET-P-50084 | CABLE set of 2, Top Stock Net 84" |
| NET-P-50087 | CABLE set of 2, Top Stock Net 87" |
| NET-P-50093 | CABLE set of 2, Top Stock Net 93" |
| NET-P-50096 | CABLE set of 2, Top Stock Net 96" |
| NET-P-50098 | CABLE set of 2, Top Stock Net 98" |
| NET-P-50099 | CABLE set of 2, Top Stock Net 99" |
| NET-P-50102 | CABLE set of 2, Top Stock Net 102" |
| NET-P-50108 | CABLE set of 2, Top Stock Net 108" |
| NET-P-50120 | CABLE set of 2, Top Stock Net 120" |
| NET-P-50121 | CABLE set of 2, Top Stock Net 121" |
| NET-P-50124 | CABLE set of 2, Top Stock Net 124" |
| NET-P-50126 | CABLE set of 2, Top Stock Net 126" |
| NET-P-50132 | CABLE set of 2, Top Stock Net 132" |
| NET-P-50144 | CABLE set of 2, Top Stock Net 144" |

**REDACTED**

## BandO NET Price List

| | |
|---|---|
| NET-P-50150 | CABLE set of 2, Top Stock Net 150" |
| NET-P-50156 | CABLE set of 2, Top Stock Net 156" |
| NET-P-542000 | CABLE W/Eyebolt set,for Endcap (1 Pc)  42" |
| NET-P-542642 | CABLE W/Eyebolt set,for Endcap (1 Pc)  90" |
| NET-P-548000 | CABLE W/Eyebolt set,for Endcap (1 Pc)  48" |
| NET-P-548648 | CABLE W/Eyebolt set,for Endcap (1 Pc)  102" |
| NET-P-55001 | HASP only, Zinc |
| NET-P-55048 | DRAW BAR SET W/ Hasp, 51 1/2" FOR 48" H |
| NET-P-55248 | DRAW BAR,One only, 51", Zinc |
| NET-P-55548 | DRAW BAR,Adjustable, One only, 51 1/2" From 38" to 48" H |
| NET-P-55648 | DRAW BAR SET Adjustable,W/ Hasp, 51 1/2" From 38" to 48" H |

REDACTED

jc 11/15/04



# EXHIBIT B
# RELEASE

In exchange for each of their representations, promises, agreements and covenants as contained herein, B&O Manufacturing, Inc. and each of its past or present predecessors, successors, assigns, agents, officers, directors, employees, representatives, attorneys, divisions, subsidiaries, and affiliates (and agents, officers, directors, employees, representatives and attorneys of such divisions, subsidiaries and affiliates), and all persons acting by, through, under or in concert with them or any of them, on the one hand, and Home Depot U.S.A. Inc. and each of its past or present predecessors, successors, assigns, agents, officers, directors, employees, representatives, attorneys, divisions, subsidiaries, and affiliates (and agents, officers, directors, employees, representatives and attorneys of such divisions, subsidiaries and affiliates, and all persons acting by, through, under or in concert with them or any of them, on the other hand, (hereinafter collectively referred to as "Releasors"), irrevocably and unconditionally release each other, and their past or present predecessors, successors, assigns, agents, officers, directors, employees, and attorneys from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs actually incurred), whether legal, equitable, or ethical, known or unknown, arising prior to the date this Release (hereinafter the "Claims"), excepting any amounts currently owing by Home Depot U.S.A., Inc. to B & O Manufacturing Inc. on outstanding invoices, and further as excepted in the following paragraph, and further excepting product liability or product claims for which B & O would otherwise be liable.

B & O agrees that it shall not sue or otherwise make any Claim against Home Depot for violation of any patent or other intellectual property rights owned, controlled, assigned, obtained or licensed by B & O Manufacturing Inc. prior to, and as of, the date of this Release, including, without limitation, any patent claims relating to safety netting, split curtain bays, safety gates or any other product sold, manufactured, or distributed by B & O Manufacturing Inc., or otherwise purchased or used by Home Depot U.S.A., Inc. It is agreed that this covenant to not sue or claim SHALL apply to Home Depot U.S.A., Inc., and SHALL NOT apply to any of the Home Depot U.S.A. Inc.'s suppliers or vendors, or to any third-party seller, manufacturer, installer, or otherwise, notwithstanding the provisions of the preceding paragraph, and further that this covenant to not sue or claim SHALL NOT apply to Home Depot U.S.A., Inc. should it acquire a legal or beneficial interest in a third party supplier, vendor, manufacturer or installer of safety netting, split curtain bays, safety gates.

B & O Manufacturing Inc. and Home Depot U.S.A., Inc have not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein relating to the Claims and hereby agree to indemnify, defend and hold each other harmless from and against any and all claims based on or arising out of any assignment or transfer, or purported assignment or transfer, of an claims, or any portion thereof or interest therein, or based on or arising out of any subrogation to any such claims or any portion thereof or interest therein in regard to the Claims.

This Release shall be binding upon B & O Manufacturing, Inc. and Home Depot U.S.A., Inc. and upon each of them and their respective heirs, administrators, representatives, executors, successors, beneficiaries and assigns, and shall inure to the benefit of their respective heirs, administrators, representatives, executors, and past or present predecessors, successors, beneficiaries and assigns, agents, officers, directors, employees, representatives attorneys, divisions, subsidiaries, and affiliates (and agents, officers, directors, employees, representatives and attorneys of such divisions, subsidiaries and affiliates) and all persons acting by, through, under or in concert with them or any of them.

Should any part, term or provision of this Release be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall be deemed not to be a part of this Release.

Releasors acknowledge and agrees that nothing herein is intended to waive or modify their continuing obligations to each other with regard to products sold by B & O to Home Depot. B & O and Home Depot agree to continue to honor all of their obligations pursuant to B & O's Expense Buying Agreement with Home Depot, including, without limitation, all of its contractual and statutory warranty and indemnity obligations, and all of its insurance obligations.

In the event of any litigation between the parties arising out of this Release, the Parties agree that any litigation shall be brought in the United States District Court for the Northern District of California, and nowhere else. The Parties further agree that this contract is entered into in the State of California, and that the laws of the State of California shall govern.

B & O Manufacturing Inc. and Home Depot U.S.A., Inc. each represent and warrant that the person executing this Release on its behalf is fully authorized to execute and enter into this Release and to bind them thereto.

4

B & O Manufacturing Inc. and Home Depot U.S.A., Inc. each represent and agrees that they have thoroughly discussed all aspect of the Release with their attorneys, that they are fully aware of their right to discuss any and all aspects of this matter with attorneys chosen by them, that they have carefully read and fully understand the provisions of this Release, and that they are voluntarily entering into this Release.

SO AGREED this _____ day of _____, 2005.

B&O Manufacturing, Inc.

By _____ NICHLAN GAVIEN

Its _____

Home Depot U.S.A., Inc.

By _____

Its _____



## EXHIBIT C
## EXPENSE BUYING AGREEMENT

# EXHIBIT C

# EXPENSE BUYING AGREEMENT

# (NON-SERVICE RELATED)

# UNITED STATES, PUERTO RICO, U.S.V.I.

## TERMS AND CONDITIONS

## 1.0    Introduction

1.1    This Home Depot Expense Buying Agreement is an integrated agreement consisting of these Terms and Conditions ("Terms and Conditions" or "Exhibit A"), (collectively, the "Expense Buying Agreement" or "Agreement").

1.2    Every Purchase Order ("Order"), whether written, faxed, or electronically communicated to the Supplier is subject to all the Terms and Conditions contained in this Expense Buying Agreement and shall apply to all purchases made by the Home Depot for non-retail items. The meaning of the term "HOME DEPOT" or "THE HOME DEPOT" shall vary depending upon the location of the facility or office for which the purchase order is issued. If the facility or office is located in the United States, "Home Depot" or "The Home Depot" shall mean Home Depot U.S.A., Inc. its affiliates, its successors and assigns, with an address of 2455 Paces Ferry Road, NW, Atlanta, Georgia 30339. If the facility or office is located in Puerto Rico, "Home Depot" or "The Home Depot" shall mean Home Depot Puerto Rico, Inc., its successors, assigns and affiliates. If the facility or office is located in the U.S. Virgin Islands, "Home Depot" or "The Home Depot" shall mean H.D.V.I. Holding Company, Inc., its successors, assigns and affiliates. The term "Supplier" means the Supplier designated herein and any successor corporation. An Order is void unless issued by an authorized agent of Home Depot, including Home Depot Services, LLC.

1.3    Signatures for execution of these Terms and Conditions are part of the Expense Buying Agreement Corporate Form.

## 2.0    Acceptance and Products

2.1    Each Order shall be deemed satisfactory to and accepted by the Supplier according to the terms and conditions contained herein, (i) if any shipment of Product is made, or (ii) if signed by an employee or authorized agent of the Supplier. There shall be no changes or modifications to the Order unless consented to in writing by an authorized agent of Home Depot and the Supplier.

2.2    Whenever present on Home Depot's premises, Supplier's personnel and representatives will comply with all Home Depot policies and procedures governing third party on-site work, including Home Depot's safety and security, and data protection, policies and procedures, and all reasonable instructions and directions as provided by Home Depot from time to time. At Home Depot's request and expense, Supplier will provide a supervisor or other designated personnel to attend one or more Home Depot training sessions with respect to Home Depot's on-site security, safety and data protection procedures who will be responsible for training any of Supplier's assigned personnel.

## 3.0    Title and Risk of Loss

3.1    All Products delivered under an Order shall be designated FOB Destination. No liability is incurred by Home Depot and risk of loss shall not pass to Home Depot until legal title passes upon receipt of the Product by Home Depot at the designated final destination, provided the Product is in good condition. Supplier shall include shipping costs pre-approved by Home Depot on its invoices.

## 4.0    Warranties and Guarantees

4.1    The Supplier agrees that Home Depot shall not be liable for the inspection of Product before use and that all warranties, express or implied, shall survive inspection, installation, acceptance, and payment by Home Depot.

4.2    Product delivered (whether paid for by Home Depot or not) is subject to inspection and or testing. Product will be of good quality, material, and workmanship, fit for its intended purpose, and free from any and all defects.

4.3    The Supplier, by accepting the Order, warrants, represents, and guarantees the following:

(a)    That the price and other terms and conditions of sale, and all guarantees, warranties, labels, and instructions furnished in connection therewith, comply with all applicable federal, state, and local laws, ordinances, codes, rules, and regulations (collectively the "Laws");

(b)    That the weights, measures, signs, legends, words, particulars, or descriptions, if any, stamped, printed, or otherwise attached to the Product or containers or referring to the Product delivered hereunder are true and correct and comply with all Laws;

(c)    That all Products conform and comply with all applicable Laws, including but not limited to the Consumer Product Safety Act; Magnuson-Moss Warranty-Federal Trade Commission Improvement Act; Fair Packaging and Labeling Act; Textile Fiber Products Identification Act; Flammable Fabrics Act; Wool Products Labeling

2



Act; Federal Food, Drug and Cosmetics Act; Federal Hazardous Substances Act; all Federal Trade Commission Rules and Regulations; and the standards of Underwriters Laboratories, Inc. or such other testing laboratory approved by Home Depot. The Supplier agrees to provide Home Depot with a signed guaranty form with respect to the above warranties, if prescribed by any Law, as part of the Supplier's invoice, before payment is required to be made under the terms of the Order, without loss of discount;

(d)     That the Product delivered pursuant to this Order does not infringe any actual or alleged patent, design, trade name, trademark, copyright trade secret, or other third party right or entitlement; and,

(e)     Supplier has not entered into and will not enter into any other agreement that conflicts with this Agreement or limits Supplier's ability to perform pursuant to the Order.

## 5.0     Indemnification and Product Liability

5.1     The Supplier agrees that it shall indemnify, defend, and hold Home Depot (which for the purpose of Sections 5 and 6 only shall include its affiliates, subsidiaries, associates, officers, and agents) harmless against and from any and all claims, lawsuits, judgements, losses, Product recalls, civil penalties for actions, costs, liabilities, damages, and expenses (including attorney's fees) incurred or to be incurred, which may be made or brought against Home Depot by any person, corporation, government, governmental agency, class, or any other entity whatsoever, arising or alleged to have arisen (i) out of the death of or injury to any person or damage to any property which resulted or is alleged to have resulted from any acts or omissions of the Supplier or from the Products it supplies hereunder; (ii) in connection with the failure or alleged failure of the Supplier or any Product to fully comply with any warranties, guarantees, or representations of the Supplier hereunder; (iii) in connection with any promotional or advertising matter, guarantees, warranties, labels, and/or instructions furnished by the Supplier or submitted to the Supplier by Home Depot for approval; or (iv) out of any infringement of any patent, design, trade name, trademark, copyright, trade secret, or other third party right or entitlement.

5.2     Notwithstanding the above, Home Depot shall have the right, but not the obligation, to participate as it deems necessary in the handling, adjustment, or defense of any such matter at its expense.

5.3     Should the Supplier fail to assume its obligations hereunder, including its obligation to diligently pursue and pay for the defense of Home Depot within a reasonable time, the Supplier hereby agrees that Home Depot shall

have the right, but not the obligation, to proceed on Home Depot's own behalf to so defend itself and to thereafter require from the Supplier reimbursement and indemnification for any and all costs and expenses (including attorney's fees and court costs) in connection therewith.

## 6.0     Insurance

6.1     The Supplier shall procure and maintain Commercial General Liability Insurance including Products Liability and Completed Operations coverage on an occurrence basis with limits of no less than those identified on the Insurance Request Form for property damage and bodily injury or death. A Broad Form Supplier's Endorsement shall be maintained in said insurance policy with Home Depot named as an additional insured, requiring that the Supplier's insurance be the primary policy with respect to any loss. If Supplier is selling to Home Depot in the U.S. or U.S.V.I., all insurance must be written by an insurance company which is rated in the most recent edition of Best's Key Rating Guide (Property-Casualty edition) as A-VIII or better. If Supplier is selling to Home Depot in Puerto Rico, all insurance must be written by an insurance company authorized to engage in insurance business in Puerto Rico which is rated in the most recent edition of Best's Key Rating Guide (Property-Casualty edition) as A-VIII or better. Additionally, the Supplier and its insurer shall provide to Home Depot thirty (30) days prior written notice of non renewal, cancellation or other change in the Supplier's coverage which may impair or otherwise affect Home Depot's rights thereunder. The purchase of insurance and the furnishing of certificates as required herein shall not be in satisfaction of the Supplier's obligations hereunder or in any way modify or limit the Supplier's agreement to indemnify, defend, and hold Home Depot harmless as required in Section 5 herein.

## 7.0     Order Cancellation, Returns, and Termination

7.1     Notice of defects in the product or of any other breach by the Supplier under the terms of the Order will be considered made within a reasonable time, if made within a reasonable time after being discovered by Home Depot. The return of such Product shall not relieve the Supplier from liability for failure to ship conforming Product under the Order or for liability with respect to warranties, express or implied. Failure of Home Depot to state a particular defect upon rejection shall not preclude Home Depot from relying on unstated defects to justify rejection or establish breach.

7.2     In addition to the terms set forth in Section 7.1 herein, the Supplier authorizes Home Depot to cancel any Order in whole or in part, reject Product, paying only for any part retained at the pro-rated Order rate and returning

3



the balance at the Supplier's expense without Home Depot incurring any liability to the Supplier, if, in Home Depot's reasonable opinion:

(a) The Supplier fails to comply with any of the terms or conditions of the Order in any material respect;

(b) The Supplier materially breaches any warranty, guaranty, or representation set forth in the Warranties and Guarantees section contained herein;

(c) Product is defective in whole or in part or Product is not fit for the purposes sold, and Supplier does not repair and/or replace said Product within 30 days of written notification of said defect;

(d) Product received is materially less than or in excess of the quantities provided for in the Order, or varies from the samples from which or specifications for which the Order was placed;

(e) The Supplier fails to comply with the shipping or invoicing instructions on the Order in any material respect;

(f) It is proven that the use of said Product by Home Depot infringes or would infringe any alleged patent, design, trade name, trademark, copyright, trade secret or other third party rights or entitlements. Notwithstanding the foregoing, this Section shall not act to limit Supplier's indemnification obligations under this Expense Buying Agreement.

(g) The Supplier files, voluntarily or involuntarily, a petition in bankruptcy under any section of the Bankruptcy Act or any state insolvency law which is not discharged within 90 days of the filing, becomes insolvent, makes any assignment for the benefit of creditors, or has a receiver appointed for it;

(h) Discontinuance of or substantial interference with Home Depot's business has occurred, in whole or part, for which the Order is given by reason of fire, flood, storm, drought, hurricane, earthquake, war, strike, labor dispute, act of God, embargo, civil commotion, governmental regulations, terrorism, or any other cause beyond Home Depot's reasonable control;

(i) Acceptance of Product in the circumstances set forth in the first eight subsections of this Section 7.2 shall not bind or obligate Home Depot to accept further deliveries on the Order. Acceptance in such circumstances shall not be construed as a waiver of Home Depot's right to

recover from the Supplier's noncompliance with the Terms and Conditions herein.

7.3   Cure of nonconforming tender may be made only with the express written consent of Home Depot.

7.4   In addition to the cancellation or return of any Orders as specified in Sections 7.1 and 7.2 herein, Home Depot may terminate this Expense Buying Agreement with the Supplier at any time with or without cause by providing 30 days written notice to the address and contact shown on the Corporate Form, however, subject to the terms of this Expense Buying Agreement, Home Depot shall remain responsible for any Orders issued prior to the effective date of termination.

## 8.0    Intellectual Property

8.1   Supplier grants to Home Depot and its affiliates the non-exclusive, worldwide, royalty-free right and license to use, copy, display, reproduce, and exhibit any Product information, specifications, data, images, and/or intellectual property Supplier furnishes Home Depot during the term of this Agreement (the "Supplier Content"). Supplier acknowledges that Home Depot is reliant upon Supplier to ensure that all Supplier Content is accurate and complete. Supplier agrees to revise, update, and resubmit Supplier Content promptly upon discovering it is inaccurate or incomplete.

8.2   Home Depot agrees that it will not make modifications or alterations to Supplier's Product specifications, images, intellectual property or Product warranty information without prior written approval.

8.3   Except for the limited license granted to Home Depot, Supplier retains all right, title and interest in and to the Supplier Content. Home Depot agrees that it will not make modifications or alterations to Supplier's Product specifications, images, intellectual property or Product warranty information without prior written approval.

8.4   Supplier acknowledges and agrees that all patents, designs, trade names, trademarks, copyrights, trade secrets, or any other proprietary rights or entitlements ("Intellectual Property") owned or controlled by Home Depot and/or its affiliates shall be the sole property of Home Depot and/or its affiliates and that Supplier will assist Home Depot, or its designee, in perfecting such Intellectual Property rights by promptly responding to Home Depot's requests for samples, specimens, drawings and/or signed documents.

8.5   Home Depot acknowledges and agrees that all patents, designs, trade names, trademarks, copyrights, trade secrets, or any other proprietary rights or entitlements ("Intellectual Property") owned or controlled by Supplier and/or its affiliates shall be the sole property of Supplier and/or its affiliates and that Home Depot will assist



Supplier, or its designee, in perfecting such Intellectual Property rights by promptly responding to Supplier's requests for samples, specimens, drawings and/or signed documents.

8.6    Supplier understands that, from time to time, Home Depot and/or other persons acting on its behalf may provide Supplier with written suggestions or ideas for new products, services, processes, and/or improvements thereto.    Supplier acknowledges that, unless otherwise agreed to in writing by the parties, all right and title in and to such suggestions or ideas shall be the sole property of Home Depot.    Nothing contained herein shall limit the defense and indemnification and insurance obligations of Supplier under Sections 5 and 6 of this Agreement.

## 9.0    Computer System Access

9.1    From time to time, Home Depot may request Supplier to access certain proprietary computer systems, networks, software, and technologies owned and operated by Home Depot and/or its parent and affiliated companies (the "Systems"), to facilitate B2B and other business related electronic transactions. The Systems are to be used only for the business purposes of Home Depot.  Home Depot may periodically monitor all use of the Systems as allowed by law. Supplier's users shall have no expectation of privacy when using the Systems.  In order to receive such access, Supplier agrees to the following:

a.    System Administrator.  In order to facilitate this Expense Buying Agreement and to coordinate information technology personnel, Home Depot may request that Supplier designate one employee who will be responsible for administering Supplier's access to and use of the Systems (a "System Administrator").    The System Administrator's responsibilities include, without limitation, assigning, changing or deleting User IDs for Supplier employees, collecting and submitting employee certifications to Home Depot, taking all necessary measures to prevent unauthorized access to the Systems and ensuring Supplier's compliance with the policies and procedures set forth in this Expense Buying Agreement.  The System Administrator shall be Supplier's sole point of contact with respect to Systems issues.

b.    Supplier Responsibility.  Supplier will have or agree to promptly create internal security policies that, at a minimum, comply with this section and common industry standards and protect the integrity of the Systems.  The Systems must at all times be protected from unauthorized use, theft, misuse, accidental or unauthorized modification, disclosure, transfer or destruction.  Anyone who has been convicted of any felony, or a misdemeanor offense related to computers, theft,

or information security, will not be allowed to serve as a System Administrator or authorized user with access to any Systems. Home Depot reserves the right to refuse Systems access to any individual convicted of any felony or misdemeanor offense.

c.    Grant of Limited Access. Home Depot hereby grants Supplier limited, non-transferable access to certain Systems as may be determined by Home Depot from time to time in its sole discretion. Supplier accepts the liability of managing its users' access to the Systems as outlined in this document. Each employee or agent of Supplier having access to the Systems will: (i) be assigned a separate User ID by Supplier and will use only that User ID when logging on to the Systems; (ii) log off the Systems immediately upon completion of each session of service; (iii) not allow unauthorized individuals to access the Systems; (iv) keep strictly confidential the User ID and password and all other information that enables such access; (v) not reuse a compromised password (e.g. a password that has become known to anyone else at any time, including in an emergency); (vi) only utilize such access to perform its obligations to Home Depot; (vii) comply with Home Depot's encryption requirements or other service policies instituted by Home Depot from time to time; (viii) not perform any unauthorized exploring or mining of the Systems; and (ix) only have access to the portion of the Systems necessary to perform the Supplier's obligations.  Supplier is solely responsible for obtaining the hardware and software necessary to properly access the Systems.

d.    Notification of Violations. If Supplier discovers or is notified of a breach or potential breach of security relating to any Systems Information, the Systems, or any applicable Law, the System Administrator will (i) promptly notify Home Depot of such breach or potential breach and (ii) if the applicable Systems Information was in the possession of Supplier at the time of such breach or potential breach, Supplier, with Home Depot's consent, shall: (1) investigate and use its commercially reasonable efforts to mitigate the effects of the breach or potential breach and (2) provide Home Depot with assurance reasonably satisfactory to Home Depot that such breach or potential breach will not recur.  No independent action to correct a security issue should be taken unless failure to immediately respond will result in irreparable harm to Supplier or Home Depot.

e.    Viruses and Disabling Code.  Supplier will not introduce any viruses, time or logic bombs,



Trojan horses, worms, timers, clocks, back doors, or other computer instructions, devices, or techniques that erase data or programming, infect, disrupt, damage, disable, or shut down the Systems or any component of the Systems, including, without limitation, its security or user data. In the event a virus or similar item is found to have been introduced into the Systems by Supplier, Supplier shall, at its sole cost and expense, (i) report it immediately to the Home Depot System Administrator, (ii) use commercially reasonable efforts to reduce or eliminate the effects of the virus or similar item and, (iii) if the virus or similar item causes a loss of operational efficiency or loss of data, mitigate and restore such losses. Furthermore, Supplier employees may not transfer personal files, data files or software to the Systems, including software that is in the public domain (e.g. shareware or freeware) as this may introduce a virus or other malicious code into the Systems.

f.    Ownership of Systems and Systems Information. Home Depot retains all rights, title and interest in and to the Systems and any data or information contained therein, including derivatives thereof ("Systems Information").

g.    Return of Information. Upon termination of this Agreement or upon Home Depot's request, Supplier will promptly return to Home Depot all tangible items containing any Systems Information, including all copies, abstractions and compilations thereof, without retaining any copies of the items required to be returned. Supplier will certify in writing that it has fulfilled its obligations under this section following return of data or information to Home Depot.

h.    Supplier's Employees Bound. The obligations of this Agreement extend to Supplier's employees, agents and approved subcontractors, and Supplier shall inform such persons of their obligations hereunder.

## 10.0 Equal Employment Opportunity – Affirmative Action Statement and Supplier Standards

10.1    Home Depot supports and complies with both the spirit and the intent of Executive Order 11246, the Civil Rights Act the Americans with Disabilities Act the Vietnam Era Veterans Readjustment Act the Rehabilitation Act of 1973, the Age Discrimination in Employment Act and other pertinent federal and state laws and regulations which are designed to promote equal employment opportunity.

10.2    The Supplier is advised that under the provisions of government contracting and in accordance with these laws and regulations, contractors and subcontractors are obliged to take affirmative action to provide equal employment opportunity with regard to race, color, religion, national origin age, sex, physical or mental disability, or status as a special disabled veteran or veteran of the Vietnam era.

10.3    Home Depot's Supplier Ethical Standards are included in the Reference Guide, and the Supplier shall comply with and shall cause each of its approved subcontractors to abide by these standards. For Home Depot branded merchandise, in order to facilitate an audit of the compliance with these standards, Home Depot reserves the right to cause, and, upon request, Supplier agrees to submit or to cause each of it's subcontractors to undergo periodic inspections of its manufacturing facilities by Home Depot's authorized third party inspector. The inspections will be unannounced and Supplier shall cause its manufacturing vendors to cooperate in such inspections, including without limitation, the granting of any permission letters necessary for Home Depot's third party inspector to gain timely access to such facilities. The cost of such inspections will be borne by Supplier. It shall be considered a material breach by the Supplier of this Agreement if the Supplier or any of its manufacturing subcontractors fail to cooperate in such inspections. In the event that such inspections reveal a material violation of the Home Depot Supplier Ethical Standards by the Supplier or any of its manufacturing vendors, the violating party shall have a thirty (30) day period in which to cure such violation to the satisfaction of Home Depot. Failure to so cure the violation within the stated time period will constitute a material breach by the Supplier of this Agreement.

## 11.0 Confidentiality

11.1 Supplier acknowledges that performance under this Agreement will give Supplier and its employees and agents access to confidential, proprietary, and trade secret information of The Home Depot ("Confidential Information"). Supplier agrees that it will keep all Confidential Information in strict confidence and not disclose or use the Confidential Information other than to fulfill its obligations to The Home Depot. Supplier shall inform its employees and agents as to the confidential and proprietary nature of the Confidential Information to which they may be exposed and Supplier shall take all necessary action to insure that said employees and agents keep Confidential Information strictly confidential. In addition, the term "Confidential Information" shall include all information disclosed to, made available to or obtained by Supplier in connection with this Agreement, and all material and reports prepared for The Home Depot hereunder, including all information (whether or not

specifically labeled or identified as confidential), in any form or medium, that is disclosed to or learned by Supplier in the performance of the Agreement that relates to the business, products, services, research or development of The Home Depot or its suppliers, distributors, agents, representatives or customers. Confidential Information further includes, without limitation, the following:

(a) Internal business information (including information relating to strategic and staffing plans and practices, marketing, promotional and sales plans, practices and programs, training practices and programs, cost, rate and pricing structures and accounting and business methods);

(b) Identities of, individual requirements of, specific contractual arrangements with, and information about, The Home Depot's suppliers, distributors and customers and their confidential, proprietary or personal information;

(c) Compilations of data and analyses, processes, methods, techniques, systems, formulae, research, records, reports, client lists, manuals, documentation, models, data and data bases relating thereto;

(d) Computer software and technology (including operating systems, application software, interfaces, utilities, modifications, macros and their overall organization and interaction), program listing, documentation, data and data bases, and any User IDs and passwords The Home Depot provides Supplier for access to The Home Depot's internal systems; and

(e) Trade secrets, trade dress, ideas, inventions, designs, developments, devices, methods, processes and systems (whether or not patentable or copyrighted practice or fixed in a tangible medium).

11.2    If Supplier receives a subpoena or other validly issued administrative or judicial process demanding Confidential Information, Supplier must promptly notify The Home Depot and tender to it the defense of that demand. Unless the demand has been timely limited, quashed or extended, Supplier will thereafter be entitled to comply with such demand to the extent permitted by Law. If requested by The Home Depot, Supplier will cooperate in the defense of a demand.

## 12.0    Federal Acquisition Regulations

12.1    In accordance with FAR 19.704 (a) (9), Subcontracting plan requirements, this agreement incorporates by reference FAR 52.219-8, Utilization of

Small Business Concerns. Home Depot requires all subcontractors (except small business concerns) that receive subcontracts in excess of $500,000 to adopt a plan that complies with the requirements of FAR 52.219-9, Small Business Subcontracting Plan

## 13.0    Recall

13.1    In the event the Consumer Product Safety Commission or other federal, state or local authority issues an order pursuant to any consumer protection law requiring Supplier to recall, replace, repair or make refunds with respect to all or part of any Product, Supplier shall do so at its expense (including without limitation, reimbursements to Home Depot for its "out-of-pocket" expenses) in such reasonable manner as is determined by Supplier. If Supplier determines in its reasonable discretion that a Recall is warranted prior to or without regard to any proceeding or determination by the Commission, Supplier shall assume all costs and expenses of such Recall (including reimbursement to Home Depot for its "out-of-pocket" and Product handling expenses arising from the Recall). Such Recall shall be effectuated in a manner agreed upon between Supplier and Home Depot. In any event, Supplier shall accept return of all of Home Depot's inventory involved in a Recall and Supplier shall refund to Home Depot all monies paid for said inventory. In no event shall Supplier treat Home Depot less favorably than any other customer in the event of a Recall or potential Recall.

## 14.0    Hazardous Material

14.1    If Supplier ships Home Depot Products that are considered hazardous, to include but not limited to paint, primers, or garden Products, these Products must be shipped in accordance with all Department of Transportation (DOT) HAZMAT regulations governing the safe handling and transportation of hazardous materials. Hazardous materials cannot be shipped by Air.

14.2    All fines, penalties, and fees associated with non-compliant packaging, labeling and/or shipping of hazardous materials will result in chargebacks to the Supplier.

## 15.0    Miscellaneous Provisions

15.1    Performance of the Order must be in accordance with all of the Terms and Conditions stated herein. There shall be no changes or modifications to the Order, unless consented to in writing and signed by an authorized agent of Home Depot.

15.2    All reasonable costs and expenses incurred by Home Depot due to the Supplier's violations of or failure




to follow any or all of the terms of the Order will be charged to the Supplier. The Supplier expressly agrees to reimburse Home Depot for all such costs and expenses and the Supplier further agrees that, at Home Depot's option, Home Depot may deduct such costs and expenses from any sum then or thereafter owing to the Supplier by Home Depot.

15.3    Any and all taxes, fees, imposts, or stamps, required by state, federal, or local government's in the selling, transferring, or transmitting of Product to Home Depot shall be paid and assumed by the Supplier. Supplier will prepay and bill California sales tax only. Home Depot will pay directly any sales or use taxes for any other state or governmental entity, and shall reimburse Supplier to the extent Supplier is required to pay such taxes.

15.4.    No provisions of the Order shall be waived or shall be construed to be waived by either party unless such waiver is in writing and signed by an authorized agent of the waiving party. No failure on the part of either party to exercise any rights and remedies granted hereunder or to insist upon strict compliance by the other party, and no acceptance of full or partial performance during the continuance of such breach, and no custom or practice of the parties at variance with the terms hereof, shall constitute a waiver of the right to demand exact compliance with the terms hereof. A waiver by either party of any specific default shall not affect or impair the rights of said party with respect to any delay or omission to exercise any rights arising from any other default. Home Depot and the Supplier each hereby–waive use of the Statute of Frauds as a defense to any Order accepted pursuant to this Agreement.

15.5    Home Depot shall not be bound by any assignment of the Order by the Supplier, unless Home Depot has consented prior thereto in writing. Home Depot may assign this Order to a present or future affiliated entity.

15.6    Any dispute arising out of, relating to or concerning these Terms and Conditions or an Order shall, as a condition precedent to any litigation, be mediated by the parties. The parties shall mutually agree upon a mediator, and shall schedule and conduct mediation at a mutually convenient time and place. Each party shall bear its own costs, fees and expenses associated with such mediation, except that the parties agree to split equally the costs and expenses of the mediator and the conduct of the mediation itself.

15.7    Notwithstanding any provision to the contrary, Supplier agrees to bring any claim or dispute against The Home Depot (including payment disputes) within one year after the occurrence of the event giving rise to such dispute. All payment and invoicing disputes will be governed by the terms contained in the Account Reconciliation Section of the Reference Guide.

15.8    Time is of the essence on any Order.

15.9    In the event of any litigation between the parties arising out of this Agreement, the Parties agree that such litigation shall be brought in the United States District Court for the Northern District of California, and nowhere else. The Parties further agree that this contract is entered into in the State of California and that the laws of the State of California, except those laws governing conflicts of laws, shall govern.

15.10    In the event that any provision of this Agreement is held invalid or unenforceable in any circumstances by a court of competent jurisdiction, the remainder of this Agreement, and the application of such provision in any other circumstances, will not be affected thereby.

15.11    The status of Supplier will be that of INDEPENDENT CONTRACTOR, and Supplier and its employees will not be deemed employees or agents of Home Depot. None of the terms set forth in this Agreement will be construed as creating a partnership, joint venture, agency, master-servant, employment, trust, or any other relationship between Home Depot and Supplier or any of their employees or agents. Supplier and its employees and agents are not eligible for, nor may they participate in, any employee benefit plans of Home Depot. Supplier is solely responsible for paying any and all taxes (including social security and income) required by law pertaining to its employees or agents or fees received under this Agreement. Supplier will indemnify, defend, and hold Home Depot, its directors, officers, employees and agents harmless against any claim or liability (including penalties) resulting from Supplier's failure to pay such taxes or contributions, or Supplier's failure to file any such tax forms. This engagement is nonexclusive and nothing in this Agreement will in any way restrict the Home Depot's right to engage others to render the same or similar services.

15.12    Supplier may not, without the prior written consent of Home Depot, assign any of its rights or delegate any of its duties pursuant to this Agreement. Any attempted assignment without Home Depot's consent will be void.

15.13    To ensure compliance with the terms of this Agreement, Home Depot will have the right, at its own expense, to inspect and audit facilities, processes and systems that are relevant to compliance with this Agreement. All audits authorized under this Section will be conducted during regular business hours in such a manner as not to interfere with normal business activities. This provision shall allow Home Depot or any third party acting on behalf of Home Depot to perform the audit.

15.14    This Expense Buying Agreement is not and shall not be construed to be a license for Supplier to use the name Home Depot or any of the logos, trademarks or service marks of Home Depot. Supplier shall not make any use of Home Depot's name, logos, trademarks or service marks, directly or indirectly, in connection with

8




any product, promotion, advertising, press release or publication without the prior written consent of Home Depot. And, in the event of such consent, only in the manner and at such times as shall be prescribed in such consent. Supplier shall not, and shall ensure that its approved subcontractors shall not, make any disclosures concerning the commercial relationship between Supplier and Home Depot without Home Depot's prior written consent. Breach of this Section by Supplier shall be considered a material breach of this Expense Buying Agreement. In the event of a breach of this Section by Supplier or its approved subcontractors, Home Depot shall have the right, at its option, to do one or more of the following, in addition to any other remedies available to Home Depot: (i) issue a retraction in the name and on behalf of Supplier; (ii) require Supplier to issue a retraction; or (iii) cancel any and all Orders without further liability to Supplier.

15.15    No course of dealing, course of performance, or usage of trade specifically set forth herein shall explain, modify or contradict the terms herein.

15.16    This Expense Buying Agreement, together with all attachments, forms, exhibits, represents the entire and integrated agreement between the parties hereto and supercedes all prior negotiations, representations or agreements, written or oral. Notwithstanding the above, if Supplier has an executed Supplier Buying Agreement with Home Depot, in the event of a conflict between the documents, the Supplier Buying Agreement shall be the controlling document.

## 16.0    Forms – Requirements and Instructions

### Insurance Certificate

An Insurance Certificate Approval or Change Form is required before submitting the Expense Buying Agreement to the appropriate Home Depot Buyer.

### Expense Buying Agreement Forms

A complete Expense Buying Agreement Forms Packet must be received, approved, and processed by a Home Depot Buyer in order to process payment. If any area is incomplete, the document cannot be processed. If you complete the documents properly, you should not experience any delays in payment.

### Required Forms

The Corporate Form is mandatory and is used as the document for execution between the parties. In addition, the following are required forms to be submitted to Home Depot.

☐    Corporate Form

☐    Insurance Approval or Change Request Form (with the appropriate Home Depot Insurance Requirements)

☐    W-9

☐    Remittance Verification

☐    Sample Invoice from your company

☐    Freight Addendum (if shipping to Puerto Rico, U.S. Virgin Islands, Alaska or Hawaii)

### Additional (Non-Required) Forms

These forms are included for submitting changes in the future (all changes must be expressly approved in writing by an authorized agent of Home Depot)

☐    Corporate Change Form

**These forms are available through your Home Depot Buyer.**

☐    Volume Rebate Agreement Form

*B&O Expense Buying Agreement 3-17-05.doc*




## Invoice Examples (Is the Country of Origin Required?)

The invoice example below shows the preferred format and required information for invoicing. Your compliance with these standards will assist in prompt and accurate payment of invoices.

SUPPLIER:
Your Name
1234 My Blvd.
Hometown, IL 12600

Remit To:    Remittance Name
456 Jane Doe Lane
Anyplace, IL 12344

| INVOICE NUMBER |
| --- |
| 245873 |

| INVOICE DATE |
| --- |
| 12/22/2003 |


Specify appropriate HD company (i.e., THD USA Inc.)

BILL TO:
Home Depot
Expense Payables
P.O. Box 105715
Atlanta, GA 30348-5715

SHIP TO:
Home Depot Store #19XX
Anywhere Rd.
Anyplace, IL 12345

| ORDER DATE | PO NUMBER | SHIP DATE | SHIP VIA |
| --- | --- | --- | --- |
| 12/20/2003 | 01141202 | 12/22/2003 | ABF Ground |

| PAYMENT TERMS | FED TAX ID, GST REGISTRATION |
| --- | --- |
| 2% 60 Days | R123456789 |

| SUPPLIER PART NBR | PRODUCT DESCRIPTION | QTY ORD | QTY SHIP | NBR OF CTNS | UNIT COST | EXTENDED COST |
| --- | --- | --- | --- | --- | --- | --- |
| 92400 | Printer Paper | 10 | 10 | 2 | $20.00 | $200.00 |
| 268435 | Pens | 6 | 6 | 2 | $15.00 | $90.00 |
| 277150 | Toner | 5 | 5 | 1 | $90.00 | $450.00 |

TOTAL QUANTITY SHIPPED    21
TOTAL CARTONS    5

PST, GST, or QST if applicable

| | |
| --- | --- |
| TOTAL | $740.00 |
| DISCOUNT (10%) | (74.00) |
| SALES TAX | 46.62 |
| FREIGHT/DELIVERY CHARGES | |
| TOTAL INVOICE AMOUNT | $712.62 |

PAYABLE IN U.S. FUNDS

*B&O Expense Buying Agreement 3-17-05.doc*




